CLEVELAND BUCHANAN SPARROW, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sparrow v. Commissioner
Docket No. 10073-87.
United States Tax Court
T.C. Memo 1989-315; 1989 Tax Ct. Memo LEXIS 315; 57 T.C.M. (CCH) 816; 50 Fair Empl. Prac. Cas. (BNA) 197; T.C.M. (RIA) 89315; June 27, 1989. *315 Dushko Zdravkovich, for the petitioner. Clement Shugarman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's income tax for 1982, 1983 and 1984 together with additions to tax as follows: Additions to Tax
Sec.
Sec. 6653
Sec.
Sec.
Year
Deficiency
6651(a)(1) [1]
(a)(1)&(2)
6654(a)
6661
1982
$ 34,981
$ 6,996 * $ 1,749
$ 3,406 $ 3,498
1983
10,761
1,614 * 538
659
1,076
1984
4,525
679 * 226
312
-- *316 In making these determinations, respondent made numerous adjustments to petitioner's reported taxable income. The petition appears to place all of the adjustments in issue but evidence was submitted on only one issue. That issue is whether petitioner is entitled, under section 104(a)(2), to exclude from gross income payments which petitioner received from the Department of the Navy in settlement of a discrimination complaint filed with the Equal Employment Opportunity Commission (EEO Commission). We shall treat all other assignments of error as abandoned by petitioner. All of the facts are stipulated. At the time the petition was filed, petitioner was a legal resident of Washington, D.C.
For a period before February 14, 1977, petitioner was employed with the Department of the Navy as a computer systems analyst, grade GS-9. On that date, after having received a notice of removal, he resigned his *317 position and filed a formal EEO complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e-1 et seq. (1982) (sometimes hereinafter Title VII), alleging that he had been discriminated against because of his race when the Navy Department took (or failed to take) the following steps: (1) cited him for poor work performance; (2) issued to him a Proposed Notice of Removal on January 24, 1977; (3) permitted discriminating officials to serve as deciding officials in his 38 previously filed EEO complaints; (4) refused to provide him with work performance standards; (5) failed to promptly forward his performance appeal of August 23, 1976, to the Civil Service Commission; (6) failed to forward his supporting evidence to the EEO counselors; (7) failed to respond to numerous informal grievances filed over a three-year period; and (8) denied him annual, court, and sick leave, and denied him a transfer to another position. The Navy Department rejected petitioner's complaints and petitioner appealed to the EEO Commission. The Commission, on January 31, 1980, determined that the Navy Department violated a regulation with respect to petitioner's *318 termination of service and ordered the Navy Department to reinstate him pending investigation of his alleged unlawful discharge. The Commission also ordered an investigation into the merits of petitioner's other complaints. The Navy Department failed to reinstate petitioner but did begin an investigation. On September 3, 1982, petitioner filed an action in the United States District Court for the District of Columbia seeking injunctive relief to enforce the Commission's order. The District Court in Sparrow v. Lehman, Civil Action No. 82-2479, denied petitioner's Motion for Preliminary Injunction as moot, finding that the Navy Department had completed its investigation on October 27, 1982. The court did not address the issue of the Navy Department's failure to reinstate petitioner. On November 26, 1982, approximately one month after the Navy Department completed its investigation, petitioner and the Navy Department entered into a settlement agreement with respect to petitioner's EEO complaint of February 14, 1977. The agreement states that petitioner agreed to withdraw his request for a hearing on the EEO discrimination complaint, agreed to settle the complaint, and further *319 agreed not to institute any action or proceeding in the future "based upon allegations of discrimination and/or reprisal arising out of his employment with the Navy under either Federal or State statute or the Constitution of the United States * * *." The agreement refers specifically to petitioner's claims and demands "in law or in equity, including, but not limited to, any and all claims under the Back Pay Act of 1966 (5 U.S.C. § 96 [sic]) [2] and Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e et seq.) or the provisions of the United States Constitution * * *." In return, the Navy Department agreed to take the following action: 1. issue a Standard Form 50 for placement in Cleveland Sparrow's official personnel file reflecting a promotion to GS-11 effective February 14, 1976; 2. issue a Standard Form 50 for placement in Cleveland Sparrow's official personnel file reflecting Cleveland Sparrow's voluntary resignation from the Department of the Navy on February 14, 1977; and 3. pay to the complainant the sum of $ 92,300, payable as follows: a. with respect to Cleveland Sparrow's claim for reinstatement *320 for the period January 31, 1980, through October 27, 1982 - $ 69,284, payable upon the execution of this document. b. with respect to all other claims and allegations of Cleveland Sparrow - $ 23,016, payable in 12 monthly installments, commencing within 30 days from the date of execution of this document and expressly subject to Cleveland Sparrow's faithful performance of the terms and conditions of this settlement and release. The determination of whether Cleveland Sparrow has faithfully performed the terms and conditions of this agreement shall be in the sole discretion of the Commanding Officer of the Navy Accounting and Finance Center. Cleveland Sparrow's obligations under this agreement are not subject to the Navy's performance of any actions beyond those specified in this agreement. In the agreement, the Navy Department disclaimed any admission of liability, fault or error. The agreement provided that petitioner is to be free from any future acts of discrimination or reprisals in connection with his past or present EEO complaints, past or present *321 legal proceedings, or future attempts to gain employment with any Federal agency. In the notice of deficiency, respondent determined that petitioner received from the Navy Department the amounts of $ 71,202 in 1982 and $ 21,098 in 1983 which were not reported on petitioner's income tax returns for those years. When the stipulation of facts was filed with the Court, respondent's counsel stated that, as a result of a dispute over whether petitioner had complied with the settlement agreement, the Navy Department temporarily suspended the payment of the monthly installments. Forms 1099, Miscellaneous Income statements, included in the record, show payments to petitioner of $ 71,202 in 1982, $ 15,344 in 1983 and $ 5,754 in 1984. Respondent further determined that the Navy Department payments are taxable to petitioner under section 61(a). Section 61(a) provides for the inclusion in gross income of all income from whatever source derived. Section 104(a)(2), however, excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic *322 payments) on account of personal injuries or sickness." Amplifying the statute, section 1.104-1(c), Income Tax Regs., states: The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. "The essential element of an exclusion under section 104(a)(2) is that the damages must derive from some sort of tort (or tort-type) claim against the payor." Bent v. Commissioner,87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1988). Petitioner contends that, under section 104(a)(2), the moneys he received from the Navy Department under the agreement were nontaxable damages for personal injuries attributable to racial discrimination. Respondent urges that the Navy Department payments were back pay or lost wages. Respondent points out that the payments were made in settlement of petitioner's EEO Commission complaint brought under Title VII and asserts that "Recovery under Title VII is exclusively for lost wages, *323 and there is no ground for excluding the payment of lost wages from income." We hold for respondent. Section 104(a)(2) focuses on amounts received through prosecution of a legal suit based on tort or tort-type rights or through a settlement agreement entered into in lieu of such prosecution. The right to the exclusion, in the case of an award by agreement, depends on the nature, and not on the validity, of the claim that is settled. Metzger v. Commissioner,88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Church v. Commissioner,80 T.C. 1104, 1107 (1983); Seay v. Commissioner,58 T.C. 32, 36 (1972). An award of damages may be measured by wages lost and still represent an excludable award for personal injury. In determining the nature of the claim, therefore, we must take into account what could have been recovered through prosecution of the legal suit -- in lieu of what was the award paid. Raytheon Production Corp. v. Commissioner,144 F.2d 110, 113 (1st Cir. 1944), *324 affg. 1 T.C. 952 (1943). We also look to the language of the settlement agreement and, if it is not clear, to the "intent of the payor" in making the payment, gleaned from other evidence. Knuckles v. Commissioner,349 F.2d 610, 613 (10th Cir. 1965), affg. a Memorandum Opinion of this Court; Fono v. Commissioner,79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); Metzger v. Commissioner,88 T.C. at 847-848; Byrne v. Commissioner,90 T.C. 1000, 1007 (1988). The agreement in this case clearly provides that $ 69,284 of the total amount in dispute was paid in settlement of petitioner's claim "for reinstatement [to employment] for the period January 31, 1980, through October 27, 1982." This period began with the date on which the EEO Commission ordered petitioner's reinstatement to employment and ended on the date on which the Navy Department completed its investigation. This part of the settlement compensated petitioner for the salary he would have received had the Navy Department complied with the EEO Commission's reinstatement order. As such, the *325 $ 69,284 of back pay is taxable income. Thompson v. Commissioner,89 T.C. 632, 646-648 (1987), affd. 866 F.2d 709 (4th Cir. 1989); Hodge v. Commissioner,64 T.C. 616, 619 (1975); Coats v. Commissioner,T.C. Memo. 1977-407; Watkins v. United States,223 Ct. Cl. 731 (1980); see also Rickel v. Commissioner,92 T.C. 510 (1989); Wirtz v. Commissioner,T.C. Memo. 1989-139. The character of the installment payments totaling $ 23,016 is not clearly described in the settlement agreement but we think they, too, were intended to be compensation in lieu of salary payments. The installment payment arrangement was adopted in an apparent effort to induce petitioner to cease filing EEO complaints. The agreement provided for petitioner's promotion to GS-11 effective February 14, 1976; no other provision was made for the payment to petitioner of the increased salary for the period from February 14, 1976, to February 14, 1977, when he was deemed to have resigned. The record does not show how much of the $ 23,016 was represented by this unpaid portion of his salary. Any amount *326 in excess of the unpaid salary, we infer, represented compensation he would have earned had he not been wrongfully discharged, as found by the EEO Commission, and remained on the payroll for a period either prior to January 31, 1980, or after October 27, 1982. The record includes copies of Forms 1099 issued by the Navy Department indicating that the payments were reported to the Internal Revenue Service as "Nonemployee Compensation." This is some evidence that the Navy Department, the payor, intended to make compensation rather than damage payments. More important, even though racial discrimination in the private sector ordinarily gives rise to a tort or tort-type claim, petitioner could not have recovered damages on a tort or tort-type suit against the Federal government or Federal officials even if he had shown discrimination. The nature of petitioner's claim was not, therefore, a claim for damages. In the absence of its consent, the Federal government is, of course, immune from suit. United States v. Sherwood,312 U.S. 584 (1941). Waiver of sovereign immunity "cannot *327 be implied but must be unequivocally expressed." United States v. King,395 U.S. 1, 4 (1969). As originally enacted in 1964, Title VII did not preempt or repeal existing remedies for employment discrimination in private employment but provided a new remedy. Johnson v. Railway Express Agency,421 U.S. 454, 459 (1975). The 1964 Act, however, did not provide any protection for Federal employees. Brown v. GSA,425 U.S. 820, 825 (1976). In 1972, "Congress amended Title VII by adding its § 717, which brought federal employees * * * within the ambit of Title VII." Loeffler v. Frank,U.S. , 108 S. Ct. 1965, 1971 (1988); 42 U.S.C. sec. 2000e-16 (1982). With exceptions not here relevant, Title VII, as amended in 1972, is the exclusive remedy available to Federal employees for actions based on discrimination. Brown v. GSA,425 U.S. 820, 832-834 (1976). As explained by the Court of Appeals in Boddy v. Dean,821 F.2d 346, 352 (6th Cir. 1987), holding that a Tennessee Valley Authority employee could not recover compensatory or punitive damages: *328 an employee suing a private employer may seek equitable relief under Title VII and legal relief in the form of compensatory and punitive damages under 42 U.S.C. § 1981. Johnson v. Railway Express Agency, Inc.,421 U.S. 454, 466 * * * (1975). In determining the extent to which it would waive sovereign immunity, Congress chose to limit relief in suits against federal agencies charging unlawful discrimination in employment practices by permitting only those remedies provided for within the comprehensive scheme of Title VII. As to petitioner's Fifth Amendment claim, referred to in the settlement agreement, in Kizas v. Webster,707 F.2d 524, 542 (D.C. Cir. 1983), the Court of Appeals stated that "The Title VII remedy declared exclusive for federal employees in Brown v. GSA precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation." See also Lawrence v. Staats,665 F.2d 1256, 1259 (D.C. Cir. 1981); Richardson v. Wiley,569 F.2d 140, 141 (D.C. Cir. 1977). The oft-cited *329 case of Davis v. Passman,442 U.S. 228, 247 (1979), is not to the contrary; in that case, an employee of Congress who held a position outside Title VII's domain was permitted to pursue a Fifth Amendment discrimination claim against a member of Congress because the complainant was "expressly unprotected by the statute [Title VII]." The remedy available to a Federal employee for racial discrimination is thus limited to the relief provided by Title VII in 42 U.S.C. sec. 2000e-5(g), which is as follows: If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay * * * or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior *330 to the filing of a charge with the Commission. The equitable relief authorized by this provision of Title VII for a Federal employee who has been a victim of discrimination does not include an award of compensatory or punitive damages. Damages are a legal remedy and not equitable relief that may be granted under Title VII. Title VII authorizes such equitable relief as the Court deems appropriate, including back pay or pay in lieu of reinstatement, but not compensatory or punitive damages. Boddy v. Dean,821 F.2d at 352; Kizas v. Webster,707 F.2d at 537; see also Walker v. Ford Motor Co.,684 F.2d 1355, 1363-1364 (11th Cir. 1982) and cases cited. Thompson v. Commissioner,89 T.C. 632 (1987), affd. 866 F.2d 709 (4th Cir. 1989), is in point. That case involved the taxability of a recovery in a class action sex discrimination suit brought against the United States Government Printing Office under Title VII and the Equal Pay Act of 1963, 29 U.S.C. sec. 206(d). Female sewing *331 machine operators established they were entitled to be paid at the level of male bookbinders. The District Court awarded the taxpayer back pay of $ 66,795.19 and liquidated damages of $ 66,135.27. This Court, citing Hodge v. Commissioner,64 T.C. 616 (1975), held that the back pay award was taxable and that the liquidated damages were excluded from gross income by section 104(a)(2). Although the taxpayer in Thompson was a Federal employee, as is petitioner, the nontaxable damages were awarded under the sex discrimination provisions of the Equal Pay Act which waives sovereign immunity for sex discrimination claims. No such waiver applies to petitioner. The Thompson holding on back pay thus supports our conclusion in the instant case. This Court has recently decided two other cases involving alleged discrimination in which it was held or recognized that sex discrimination and age discrimination may be the source of a tort or tort-type claim. In Metzger v. Commissioner,88 T.C. 834 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988), a Muhlenberg College professor filed four proceedings alleging that she *332 was denied tenure because of sex discrimination: a state court suit for breach of contract; a state commission proceeding; an EEO Commission proceeding in which she sought reversal of the negative tenure decision, back pay, and the restoration of all fringe benefits; a Federal court proceeding based on the Thirteenth and Fourteenth Amendments to the Constitution, 42 U.S.C. secs. 1981, 1983, 1985(3), 1986, and 2000e et seq., 29 U.S.C. 206(d) and certain Executive Orders. The taxpayer and the college settled all of the proceedings upon the payment of $ 75,000. The taxpayer reported half of the settlement as income in the form of the payment of wage claims and asserted a right to exclude the other half from gross income as damages under section 104(a)(2). This Court upheld the claimed exclusion, focusing primarily on the principle that wrongful discrimination may be the source of a tort or tort-type claim for which damages for personal injuries within the meaning of section 104(a)(2) may be received. The taxpayer, however, was not, as in the instant case, asserting a claim against the Federal government in a proceeding in which damages *333 for personal injury could not be awarded. At least some of the statutes that the taxpayer relied upon in her suit against the college authorized the recovery of damages for personal injuries. In Rickel v. Commissioner,92 T.C. 510 (1989), the taxpayer alleged that his employer had discriminated against him because of his age. He sued his employer under the Age Discrimination in Employment Act of 1967, 29 U.S.C. sec. 621 et seq. (1985), and the Fair Labor Standards Act of 1938, 29 U.S.C. sec. 201 et seq. (1982), seeking back pay and an equal sum of liquidated damages as authorized by the statutes. The parties settled the case and the taxpayer sought to exclude from gross income the payments he received, contending that they represented damages for personal injuries within the meaning of section 104(a)(2). This Court held that the back pay portion of the payments was taxable as income and that the liquidated damages portion would be nontaxable compensation for personal injuries. In the absence of an allocation in the settlement agreement, this Court found that one-half of the taxpayer's recovery was taxable and the *334 other half was excludable under section 104(a)(2). See Byrne v. Commissioner,90 T.C. 1000 (1988). The Court was careful to point out, contrary to the situation in the instant case, that the statute on which the district court action was based authorized damage awards as well as back pay. In summary, petitioner's employment rights were defined by statute. He had no common law or statutory remedy for the recovery of damages, whether compensatory or punitive in nature. Through the prosecution of a suit, he could have recovered only back pay for the period he was not permitted to work, or "front" pay in lieu of his reinstatement or both. We think the terms of the settlement agreement are fully consistent with this reality. We conclude that the $ 23,016 as well as the $ 69,284 was intended to be, and was, paid to petitioner as back pay or front pay and not as damages for personal injuries within the meaning of section 104(a)(2). Thus, the cases which we have cited above with respect to the taxability of the $ 69,284 also support the taxability of the $ 23,016. [3]
*335 We hold that the Navy Department payments to petitioner are not excludable as damages and are taxable income. In the absence of any evidence on the other adjustments made in the notice of deficiency, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50% of the interest due on the underpayments.↩
2. The agreement was apparently intended to refer to the Back Pay Act of 1966 (5 U.S.C. sec. 5596↩).
3. The Back Pay Act of 1966, 5 U.S.C. sec. 5596, referred to in the settlement agreement, authorizes the retroactive recovery of wages whenever a Federal employee has undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal of all or part of the compensation to which the employee is entitled. It does not include a waiver of sovereign immunity to permit the recovery of damages from the Federal government. Leopold v. United States Civil Service Commission,450 F. Supp. 154, 156 (E.D. N.Y. 1978); see also United States v. Testan,424 U.S. 392↩ (1976).