Cleveland Buchanan SPARROW,
Sr., Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 90–1151.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 30, 1991.

Decided Nov. 26, 1991.

Rehearing En Banc Denied
Feb. 5, 1992.

Cleveland Buchanan Sparrow, Sr., pro se.

David M. Dorsen, Washington, D.C., for amicus curiae.

Bruce R. Ellisen, Atty., Dept. of Justice, for appellee. Shirley D. Peterson, Asst. Atty. Gen. and, Gary R. Allen, Ann B. Durney and Janet A. Bradley, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The issue in this appeal is whether back pay awarded in settlement of a racial discrimination claim filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1988), is excludable from a taxpayer's income as damages received on account of a personal injury under section 104(a)(2) of the Internal Revenue Code. The Tax Court held that such an award is not. *Sparrow v. Commissioner,* 57 T.C.M. (CCH) 816 (1989). We affirm.

I.

This case was tried on stipulated facts below. The appellant, Cleveland B. Sparrow, Sr., was employed as a GS–9 computer specialist with the Department of the Navy for a period before February 14, 1977. On that date, Sparrow resigned his position after receiving a notice of removal and filed a complaint under Title VII [1] alleging,

---

1. Under Title VII, a federal employee alleging    that he has been the victim of racial discrimina-

inter alia, that he had been the victim of racial discrimination. The Navy rejected Sparrow's complaint. Sparrow then sought review by the Equal Employment Opportunity Commission (EEOC). On January 31, 1980, the EEOC held that the Navy had violated its regulations in terminating Sparrow and ordered it to reinstate him pending its investigation of Sparrow's alleged unlawful discharge and other complaints. Although the Navy did begin an investigation, it did not reinstate Sparrow.

Thereafter, Sparrow sought an injunction enforcing the EEOC's order in the district court. The district court denied Sparrow's request as moot because the Navy had begun to investigate but its decision did not address the Navy's failure to reinstate Sparrow.

Shortly after the Navy completed its investigation, Sparrow agreed to settle his complaint. Under the settlement agreement, Sparrow withdrew his request for a hearing on the complaint and also agreed not to initiate any future action or proceeding alleging racial discrimination or reprisal arising out of his employment with the Navy. The settlement agreement covered Sparrow's claims "in law or in equity, including, but not limited to, any and all claims under the Back Pay Act of 1966 [2] ... and Title VII of the Civil Rights Act of 1964 ... or the provisions of the United States Constitution." 57 T.C.M. (CCH) at 817.

In return, the Navy agreed, among other things, to pay Sparrow the sum of $92,300. Of this amount, $69,284 was paid on Sparrow's claim for reinstatement for the period from January 31, 1980, through October 27, 1982, when the Navy completed its investigation. The remaining $23,016 [3] was allocated to the settlement of Sparrow's remaining claims (and was expressly conditioned on Sparrow's faithful performance of his obligations under the agreement).

The Navy then paid Sparrow $71,202 in 1982, $15,344 in 1983 and $5,754 in 1984. Sparrow did not report any of these payments as income on his tax returns for the years 1982 through 1984. The Commissioner of Internal Revenue (Commissioner) issued a notice of deficiency determining that Sparrow had under-reported his income in the years 1982 through 1984 and assessed additional taxes and penalties.

Sparrow then filed a petition in the United States Tax Court arguing that the settlement payments were excludable from his gross income under section 104(a)(2) of the Internal Revenue Code, 26 U.S.C. § 104(a)(2), which provides that "gross income does not include ... the amount of any damages received ... on account of personal injuries." Specifically, Sparrow argued that racial discrimination was a personal injury and that the payments he received in settlement of his claim of racial discrimination were therefore non-taxable damages.

The Tax Court did not agree. It first analyzed the nature of the payments Sparrow received under the settlement agreement, finding that the $69,284 paid in settlement of Sparrow's claim for reinstatement for the period from January 31, 1980, through October 27, 1982, was compensation for the salary Sparrow "would have received had the Navy Department complied with the EEO Commission's reinstatement order." 57 T.C.M. at 819. Accordingly, the Tax Court held this amount of the settlement was back pay which was taxable as income. *Id.*

---

tion must file his complaint with the agency he is employed by. Next, on receipt of the employer agency's determination, the employee can either seek review by the Equal Employment Opportunity Commission or file suit in federal district court. Commission decisions may be challenged in the district court. *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976).

**2.** The Back Pay Act entitles a federal employee, who has been "found by appropriate authority

under applicable law, rule, [or] regulation ... to have been affected by an unjustified or unwarranted personnel action" resulting in the loss or reduction of pay, to recover back pay and attorney's fees. 5 U.S.C. § 5596(b)(1). The Back Pay Act does not itself give rise to an independent claim and therefore has no effect on our decision.

**3.** This amount was actually paid in twelve monthly installments. 57 T.C.M. (CCH) at 818.

The Tax Court then turned to the remaining $23,016 of the settlement agreement. While it noted that "the character" of the payments "was not clearly described in the settlement agreement," it concluded that the payments were "intended to be compensation in lieu of salary payments." *Id.* In reaching this conclusion, the Tax Court first found that the settlement agreement had provided for Sparrow's retroactive promotion from GS–9 to GS–11 effective February 14, 1976, one year to the day before Sparrow resigned. It then concluded that a portion of the $23,016 was attributable to the pay differential between the GS–11 salary he should have received and the GS–9 salary he actually received. While the record does not indicate the precise amount, the Tax Court inferred that the portion of the $23,016 not attributable to the GS–11/GS–9 pay differential "represented compensation [Sparrow] would have earned had he not been wrongfully discharged as found by the EEO Commission and remained on the payroll for a period either prior to January 31, 1980, or after October 27, 1982." *Id.* The Tax Court also noted that the Navy had described the payments as "Nonemployee Compensation" on the 1099 Forms it filed with the Internal Revenue Service. The Tax Court viewed this as evidence that the Navy "intended to make compensation rather than damage payments."[4] *Id.* Finally, after reviewing the language and legislative history of Title VII, the Tax Court concluded that, because Title VII authorizes only equitable remedies, including back pay, the payments received by Sparrow were not damages excludable from income under section 104(a)(2).

## II.

Section 61 of the Internal Revenue Code defines gross income as "all income from whatever source derived." I.R.C. § 61(a), 26 U.S.C. § 61(a). The courts have consistently recognized that, in enacting this sec-

tion, Congress intended to exercise "the full measure of its taxing power." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429, 75 S.Ct. 473, 475, 99 L.Ed. 483 (1955) (quotations omitted). Thus, it has long been recognized that section 61 states a rule of inclusion. *Id.* at 430, 75 S.Ct. at 476. In other words, unless another portion of the Internal Revenue Code specifically excludes an accession to wealth from taxation, a taxpayer must include it in his income.

### A.

We deal here with one of the exclusions and its applicability to Sparrow's back pay award. Specifically, we are required to construe section 104(a)(2) which provides in relevant part that "gross income does not include ... the amount of any damages received (whether by suit or agreement and whether as lump sums or in periodic payments) on account of personal injuries or sickness." There are two elements to this exclusion: (1) the amount received must be damages and (2) the amount received as damages must result from a personal injury or sickness. Accordingly, for Sparrow to prevail, he must show both that he received damages and that they were received as compensation for a personal injury.

The predecessor of section 104(a)(2) was originally enacted as section 213(b)(6) of the Revenue Act of 1918, ch. 18, 40 Stat. 1066. This statute expressly exempted from income "the amount of any *damages* received whether by suit or agreement on account of such [personal] injuries or sickness." *Id.* (emphasis added). But neither the Revenue Act of 1918 nor its legislative history defined the meaning of damages. *See* 40 Stat. 1066, §§ 1, 200; H.R.Rep. No. 767, 65th Cong., 2d Sess. 9–10 (1918). We do know that, at that time, damages were a remedy at law. *See, e.g., Rice & Adams Corp. v. Lathrop*, 278 U.S. 509, 513, 49

---

4. Neither Sparrow nor the amicus curiae, a class of 101 female federal employees who received back pay resulting from a sex discrimination claim against the U.S. Printing Office, challenges the Tax Court's characterization of the payments as back pay or compensation in lieu of salary payments. Accordingly, we have no occasion to review the Tax Court's findings regarding the nature of the payments Sparrow received.

S.Ct. 220, 222, 73 L.Ed. 480 (1929) ("No ground for equitable jurisdiction properly could be alleged, for, plainly, none existed, and the bill was merely for an accounting of profits and damages, the remedy at law which was complete.") (discussing *Root v. Railway Co.*, 105 U.S. 189, 26 L.Ed. 975 (1882)); *United States v. Oregon Lumber Co.*, 260 U.S. 290, 293, 43 S.Ct. 100, 100, 67 L.Ed. 261 (1922) ("plaintiff in error brought an action at law ... to recover damages"); *Friederichsen v. Renard*, 247 U.S. 207, 208, 38 S.Ct. 450, 450, 62 L.Ed. 1075 (1918) (plaintiff was not entitled to equitable relief but had remedy at law for damages); *Archer v. Greenville Sand & Gravel Co.*, 233 U.S. 60, 64–66, 34 S.Ct. 567, 568–69, 58 L.Ed. 850 (1914) (reversing dismissal of bill in equity because "bill show[ed] a continuing trespass of such a nature and of such character of injury that remedies at law by actions for damages would be inadequate"); *Javierre v. Central Altagracia*, 217 U.S. 502, 508, 30 S.Ct. 598, 599, 54 L.Ed. 859 (1910) (reversing grant of injunction because "a suit for damages would have given adequate relief, and therefore the appellee should have been confined to its remedy at law"). Damages remain today a remedy at law. *See, e.g., Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Furthermore, a plaintiff seeking damages had then and retains today the right to a jury trial under the seventh amendment. *See, e.g., Curtis*, 415 U.S. at 195–198, 94 S.Ct. at 1008–10; *Ross v. Bernhard*, 396 U.S. 531, 534, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970); *Capital Traction Co. v. Hof.*, 174 U.S. 1, 13, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899); *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 276, 34 L.Ed. 873 (1891).

■ We think these authorities make it clear that the term "damages" as used in section 104(a)(2) embodies a monetary amount originally awarded at law, not in equity. We conclude that a taxpayer may exclude an award obtained through the prosecution or settlement of a suit only if he first shows that the amount received constitutes damages as that term has been traditionally defined, that is, an award of money recoverable in an action at law.[5] We next consider whether a Title VII back pay award constitutes an award of damages under section 104(a)(2).

### B.

The starting point for our analysis of whether back pay awarded under Title VII constitutes damages is the language of section 2000e–5(g) of that Title, 42 U.S.C. § 2000e–5(g). Section 2000e–5(g), which prescribes the remedies available when an employer has engaged in discrimination cognizable under section 2000e–2, provides that:

> the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees with or without back pay ... *or any other equitable relief* as the court deems appropriate.

42 U.S.C. § 2000e–5(g) (emphasis added).

We, and every other circuit that has addressed the issue, have recognized that Congress, in enacting this section and providing for the recovery of back pay, did not make available the legal remedies of compensatory and punitive damages but instead limited relief to equitable remedies.[6] *See Bundy v. Jackson*, 641 F.2d 934, 946 n. 12 (D.C.Cir.1981); *see also Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 159 (1st Cir.1990); *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 581

---

**5.** After the taxpayer makes this showing, he must then show that the amount was received as a result of a personal injury. L.R.C. § 104(a)(2).

**6.** Several courts have characterized back pay as an equitable remedy akin to restitution. *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1364 n. 14 (11th Cir.1982) (quoting *Richerson v. Jones*, 551

F.2d 918, 927 n. 13 (3d Cir.1977)); *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 309 (6th Cir. 1975). *See also Curtis v. Loether*, 415 U.S. 189, 197, 94 S.Ct. 1005, 1010, 39 L.Ed.2d 260 (1974) ("back pay [i]s an integral part of an equitable remedy, a form of restitution") (comparing relief available under Title VIII, 42 U.S.C. § 3612, with that available under Title VII).

(2d Cir.1989); *Mitchell v. Seaboard Sys. R.R.*, 883 F.2d 451, 453 (6th Cir.1989); *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir.1988), *cert. denied*, 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989); *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir.1987); *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 138 (3d Cir.), *cert. denied*, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); *Patzer v. Board of Regents*, 763 F.2d 851, 854 n. 2 (7th Cir.1985); *Muldrew v. Anheuser-Busch, Inc.*, 728 F.2d 989, 992 n. 2 (8th Cir.1984); *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1363–1364 (11th Cir.1982); *Shah v. Mt. Zion Hosp. & Medical Ctr.*, 642 F.2d 268, 272 (9th Cir.1981); *Pearson v. Western Elec. Co.*, 542 F.2d 1150, 1152 (10th Cir.1976).

■ While the Supreme Court has not spoken directly on the issue, it has reminded us on several occasions that not all awards of monetary relief are properly characterized as the " 'legal' relief" traditionally awarded in courts of law. *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009; *see also Porter v. Warner Holding Co.*, 328 U.S. 395, 402, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332 (1946) (equitable remedy of restitution "differs greatly" from damages). Moreover, in the seventh amendment context, the distinction between the legal remedy of damages and the equitable remedy of restitution has been consistently maintained. *See, e.g., Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009. Because the available remedies are equitable, a Title VII plaintiff has no right to a jury trial. *Robinson v. Lorillard Corporation*, 444 F.2d 791, 802 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969).

■ In sum, the overwhelming weight of authority supports the view that an award of back pay under Title VII does not constitute the legal remedy of damages. Accordingly, it is not excludable from income under section 104(a)(2).

## C.

Our conclusion that back pay is taxable finds ample support in the case law. *See Thompson v. Commissioner*, 866 F.2d 709, 712 (4th Cir.1989) (back pay, as distinguished from liquidated damages portion of award, includable in gross income); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1579–80 (5th Cir.1989), *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990) ("damages that constitute a back pay award under Title VII are not exempt under § 104(a)(2)"); *Watkins v. United States*, 650 F.2d 286, 223 Ct.Cl. 731 (1980) (back pay awarded under Title VII constitutes compensation for services and is includable in income); *Coats v. Commissioner*, 36 T.C.M. (P–H) 1642 (1977) (same); *Hodge v. Commissioner*, 64 T.C. 616 (1975) (same); *cf. Sears v. Atchison, Topeka & Santa Fe Ry.*, 749 F.2d 1451 (10th Cir.1984) (trial court properly included tax component in Title VII award). We cannot disregard such substantial authority.

We recognize that our holding that a Title VII back pay award is not excludable from income conflicts with that of the Sixth Circuit. *See Burke v. U.S.*, 929 F.2d 1119 (6th Cir.), *cert. granted*, ——— U.S. ———, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991). It also conflicts with the Third Circuit's rationale in *Rickel v. Commissioner*, 900 F.2d 655 (3d Cir.1990), where that circuit held that back pay awarded under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1988), is excludable. *See also Pistillo v. Commissioner*, 912 F.2d 145 (6th Cir.1990). In our view, these cases reflect a misapprehension of the inquiry required under section 104(a)(2).

In *Burke*, the Sixth Circuit relied on the decision of the full tax court in *Threlkeld v. Commissioner*, 87 T.C. 1294, 1299 (1986), *aff'd*, 848 F.2d 81 (6th Cir.1988), in concluding that a Title VII back pay award is excludable under section 104(a)(2). In *Threlkeld*, the Tax Court had stated:

Section 104(a)(2) excludes from income amounts received as damages on account of personal injuries. Therefore, whether *the damages received* are paid on ac-

count of "personal injuries" should be the beginning and end of the inquiry. To determine whether the injury complained of is personal, we must look to the origin and character of the claim (citations omitted), and not to the consequences that result from the injury.

87 T.C. at 1299 (quoted in *Burke*, 929 F.2d at 1121) (emphasis added). Seizing on this language, the Sixth Circuit then concluded that "whether the § 104(a)(2) exclusion applies requires an examination of the nature of the injury to determine whether the injury and claim are personal and tort-like in nature, and not whether the consequences of the injury resulted in an award of compensatory damages or *damages for back pay.*" *Burke*, 929 F.2d at 1121 (emphasis added). In one sentence, the Sixth Circuit leapfrogged over the damages requirement directly to the personal injury inquiry, at the same time fusing the distinction between damages and back pay universally recognized in Title VII cases.

To us, the Sixth Circuit's decision is irreconcilable with Title VII precedent and misinterprets *Threlkeld* to boot. The holding in *Threlkeld* speaks only to the rule for determining whether a particular claim constitutes a "personal injury" under section 104(a)(2). So limited, it makes complete sense to examine the "origin and character of the claim" and not its consequences in determining whether it constitutes a claim for personal injuries. In *Threlkeld*, then, the Tax Court properly held that the injury to the taxpayer's professional reputation arising out of a malicious prosecution was a personal injury even though the direct consequence of that injury was lost income. But in *Threlkeld* the taxpayer was entitled to recover *damages* under state law for his injury, *see* 87 T.C. at 1308, and thus both requirements of section 104(a)(2) were satisfied. Here, however, as in *Burke*, the taxpayer did not recover damages. Labelling "back pay" as damages, as the Sixth Circuit did, not only conflicts with the Supreme Court's teaching that not all awards of monetary relief constitute the legal remedy of damages, *Curtis v. Loether,* 415 U.S. at 196, 94 S.Ct. at 1009; *Porter v. Warner Holding Co.,* 328 U.S. at 402, 66

S.Ct. at 1091; it also ignores the unanimous circuit court decisions holding that Title VII does not provide for damage awards.

For similar reasons, we also reject the approach taken by the Third Circuit in *Rickel*. *Rickel* relies on the legislative history of the amendment to section 104(a)(2) effected by the Omnibus Budget Reconciliation Act of 1989, 103 Stat. 2379. In *Rickel*, the Third Circuit noted that the bill initially would have amended section 104(a)(2) to limit the excludability of damage awards to those arising out of physical injuries and sickness. 900 F.2d at 664. The *Rickel* court found it significant that the House Ways and Means Committee report on the bill observed that "some courts have held that the exclusion applies to damages in cases involving employment discrimination" but the "committee believes that such treatment is inappropriate where no physical injury or sickness is involved." *Id.* (citations omitted). Because Congress did not adopt this provision but did amend section 104(a)(2) to provide for the taxation of punitive damage awards, the *Rickel* court concluded that "Congress chose to implicitly endorse the courts' expansive interpretation of § 104(a)(2)." *Id.*

Inferring congressional intent from the failure to enact a legislative proposal is frequently a risky enterprise, *cf. Avco Corp. v. United States Dep't of Justice,* 884 F.2d 621, 625 (D.C.Cir.1989), and we find the Third Circuit's rationale unpersuasive for several reasons. First, while we acknowledge that at the time the amendment was considered, the holding in *Metzger v. Commissioner,* 88 T.C. 834 (1987), *aff'd without published opinion,* 845 F.2d 1013 (3d Cir.1988), that back pay awarded under Title VII was excludable from income had issued, our research indicates that it was the only case which had so held and was contrary to the weight of authority. *See, e.g., Thompson v. Commissioner,* 866 F.2d 709, 712 (4th Cir.1989); *Watkins,* 223 Ct.Cl. at 733; *Hodge,* 64 T.C. at 619; *Coats,* 36 T.C.M. (CC 11) at 1644; *see also Pistillo v. Commissioner,* 58 T.C.M. 1623 (P–H) (1989); *Wirtz v. Commissioner,* 56

T.C.M. 1596 (P–H) (1989). Congress could have rightfully concluded that *Metzger* was nothing more than "a deviation from the strong currents of precedent—a derelict on the waters of the law," *Lambert v. California*, 355 U.S. 225, 232, 78 S.Ct. 240, 245, 2 L.Ed.2d 228 (1957) (Frankfurter, J., dissenting), and thus viewed the adoption of the amendment as unnecessary.

Second, even were we to derive the same significance that the Third Circuit did from Congress's failure to enact the proposal to tax damages awarded on account of discrimination claims, it would be irrelevant to the issue before us. Here, unlike *Rickel*, we do not address whether a monetary award received through the prosecution of a claim under the ADEA, a statute which allows for the recovery of damages, is excludable from income under section 104(a)(2). *See Powers v. Grinnell Corp.*, 915 F.2d 34 (1st Cir.1990). Rather, we deal solely with Title VII which does not provide for the recovery of damages. Because only damages are excludable from income under section 104(a)(2), there was, and is, no need for Congress to act. This legislative history is simply beside the point.[7]

What is relevant in the history of section 104(a)(2) is an understanding of the principle which underlies its enactment. Shortly before the enactment of the predecessor statute to section 104(a)(2), the United States Attorney General had concluded that "the proceeds of an accident insurance policy [we]re not 'gains or profits and income'" but instead represented a return of capital not taxable under the Supreme Court's holding in *Doyle v. Mitchell Brothers Co.*, 247 U.S. 179, 185, 38 S.Ct. 467, 469, 62 L.Ed. 1054 (1918). 31 Op.Atty.Gen. 304 (1918). Only two years later, the Internal Revenue Service noted that section 213(b)(6) of the Revenue Act of 1918, the predecessor of section 104(a)(2), was "merely declarative of th[is] conclusion ... and intended to go no further." S. 1384, 2 C.B. 71, 72 (1920) (citing 31 Op.Atty.Gen. 304 (1918)). The Internal Revenue Service then noted that a "personal injury not resulting in the destruction or diminution of a capital asset would not be within the exemption." *Id.* at 72.

Viewed against this background, we conclude that section 104(a)(2) does not make a Title VII back pay award excludable from income. An award of back pay simply does not represent a return of capital. It represents back wages which, although belatedly received, are nevertheless income.

### III.

Our view that a back pay award is includable in income is also consistent with the congressional purpose underlying Title VII. The remedies available under Title VII exist to make whole the employee discriminated against, that is, to place him in the same position he would have been in but for the discrimination, but not to compensate beyond that. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) ("[t]he central statutory purposes" of Title VII are "eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination"). The Section-by-Section Analysis introduced by Senator Williams at the time the back pay provisions were enacted as part of the Equal Employment Opportunity Act of 1972 stated:

> The provisions of this subsection [the back pay subsection now codified at 42 U.S.C. § 2000e–5(g)] are intended to give the courts wide discretion exercising

---

7. In *Rickel*, the Third Circuit also relied on *Byrne v. Commissioner*, 883 F.2d 211 (3d Cir. 1989). In *Byrne*, the taxpayer had been discharged for cooperating with an EEOC investigation of her employer. 883 F.2d at 212. Byrne brought claims under both section 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), which prohibits discharging or discriminating against an employee for testifying against an employer, and New Jersey law.

883 F.2d at 215. To redress violations of section 215, Congress expressly provided for both legal and equitable relief, including liquidated damages. 29 U.S.C. § 216(b). There was, then, a basis for the Third Circuit's conclusion that Byrne's award was excludable under section 104(a)(2): it constituted damages. Moreover, damages were also recoverable under New Jersey law. 883 F.2d at 216.

their *equitable powers* to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of [through cease and desist orders], but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, *so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.*

118 Cong.Rec. 7168 (1972) (quoted in *Albemarle Paper Co.*, 422 U.S. at 421, 95 S.Ct. at 2373) (emphasis added).

The taxing of a back pay award is consistent with the purpose of Title VII because it places the employee who has been discriminated against in the same position as if he had not been discriminated against, no more and no less. Had Sparrow remained employed by the Navy, he would have received a salary from the Navy and been required to pay federal income tax on it. Congress, in enacting Title VII, chose to limit the scope of the remedies available in redressing Sparrow's claim of discrimination. To hold that back pay is excludable from income would give Sparrow something more than he is entitled to under Title VII. In effect, it would give him a tax benefit thus placing him in a better position than had he not allegedly been discriminated against. In view of the injury Sparrow asserted, such a result might seem fair. But it would be contrary to congressional intent as evidenced by the explicit provisions of Title VII.

### IV.

Having concluded that Sparrow's back pay award does not constitute damages, we need not decide whether a claim of racial discrimination constitutes a "personal inju-

ry" under section 104(a)(2).[8] Accordingly, the decision of the Tax Court is

*Affirmed.*

---

**8.** The court notes that Title VII has been amended by the newly-enacted legislation generally known as the Civil Rights Act of 1991, S. 1745, 102d Cong., 1st Sess. (1991).