**Ralph RAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–476T.**

United States Claims Court.

March 27, 1992.

Ralph Ray, pro se.

Bartholomew Cirenza, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, atty. of record, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge:

Ralph Ray, plaintiff, represented pro se, seeks a refund of federal income tax for tax year 1983 that the IRS assessed on a payment of $5,474 made by the Singer Company (Singer) pursuant to an agreement to settle litigation related to the closing in November 1982 of Singer's manufacturing facility in Elizabeth, New Jersey. Plaintiff had worked for Singer for 36 years, and was a member of Local 461, International Union of Electrical, Radio and Machine Workers, AFL–CIO (Local 461), which represented workers employed at the Elizabeth facility. The case is before the court on defendant's motion for summary judgment.

During oral argument on defendant's motion on November 8, 1991, it became apparent that additional information was needed to clarify legal issues and relevant factual matters. Inasmuch as plaintiff was represented pro se because the amount at issue was not sufficient to justify representation by counsel, Local 461 was no longer operative, and plaintiff was ill equipped to present needed materials, steps were taken to assure the claim would be considered in accordance with standards applicable to pro se plaintiffs. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Defendant was directed to supplement the motion papers with an additional brief on legal issues and to provide additional documents. Defendant's motion papers have been supplemented in accordance with the order. Defendant's counsel of record has discharged in an exemplary manner the obligation to give special assistance when a pro se plaintiff is involved. His effort in this regard reflects a high degree of professionalism.

There are no material issues of fact in dispute. Disposition of this claim by summary judgment procedures is appropriate.

Singer had operated a facility in Elizabeth since 1877, and Local 461 under a succession of collective bargaining agreements, had represented Singer employees at that location since 1949. In 1973, Singer had 3,500 employees at the Elizabeth facility; by 1980, economic changes had resulted in a reduction of the work force to 1,530. In October 1980, Singer announced it would discontinue manufacture of consumer products at the Elizabeth facility and layoff related production workers.

In 1981, the collective bargaining agreement was renewed, to be effective from May 10, 1981, to May 14, 1984, with special provisions applicable to each party that were negotiated with the objective of keeping the Elizabeth facility operative. Local 461 agreed to certain "give-backs," conditions of employment and benefits secured in previous agreements, such as: elimination of two floating paid holidays per year, elimination of two 10–minute rest periods per day, decrease in number of paid hours for shop stewards for union business, and changes in production standards to reduce production costs and increase productivity. Singer estimated the value of the "give-

backs" to the company, over the term of the agreement, as $1,853,000. For its part to keep the plant open, Singer agreed: (1) to invest $2 million in restructuring the facility to make more efficient production facilities for industrial products, and (2) to use its best efforts to secure defense work.

In November 1981, 5 months after the agreement had been signed, Singer reached an internal decision to consider closing the plant. At that time Singer abandoned any efforts to restructure the plant and all efforts aimed at securing defense work ceased. The give-backs of the employees, however, continued unabated. On February 11, 1982, Singer officially announced that it would close the plant by the end of 1982.

On March 26, 1982, Local 461 filed a complaint in the district court for the district of New Jersey. *Local 461 v. Singer Co.*, 540 F.Supp. 442 (D.N.J.1982). The relief sought included: (1) damages for breach of the collective bargaining agreement, and (2) preliminary and permanent injunctive relief (based on alleged fraud and misrepresentation) to restrain Singer from closing the Elizabeth facility. The complaint also contained three causes of action based on state law claims on behalf of the community of Elizabeth, and age discrimination claims of employees. These three counts subsequently were dismissed with prejudice by consent order.

On May 21, 1982, the request for preliminary injunctive relief to restrain Singer from closing the plant was denied. On July 8, 1982, the claim for permanent injunctive relief was denied. *Id.* at 450. The court found that the collective bargaining agreement as modified was clear and unambiguous and that it contained no promise that Singer would refrain from discontinuing operations in Elizabeth. On the other hand, the court found that Singer, after having extracted substantial give-backs from the employees, had reneged on its agreements to spend $2 million to restructure the plant, and to use its best efforts to secure defense contracts. The court stated:

Accordingly, although the Court will not compel Singer to stay in business, we will not permit a company in clear breach of its collective bargaining agreement to escape its responsibility to answer in damages. Instead, the Court will award plaintiffs monetary damages in an amount to be measured either by the value of the union "give-backs," which will be determined at trial, or by the $2 million Singer promised, but failed, to spend, whichever is greater.

*Id.* at 444.

The question: "What is the correct measure of damages for defendant's breach of contract?" was certified for immediate appeal. Subsequently, Local 461 appealed, and submitted or petitioned on related matters, to the Court of Appeals for the Third Circuit.

Negotiations between Local 461 and Singer resulted in a settlement agreement on November 19, 1982. The settlement agreement provided that Singer would pay $3.5 million to bargaining unit employees actively employed at the Elizabeth facility on May 10, 1981. In the agreement, Local 461 and its members agreed to withdraw with prejudice all claims pending in the district court or on appeal and to release Singer from all claims relative to violations of the collective bargaining agreement and the closing of the Elizabeth facility. The settlement documents include an Agreement and Release, dated December 6, 1982, which in Paragraph 13 states:

Liability for any and all of Plaintiffs' claims is expressly denied by the Company. It is understood and agreed that this is a compromise settlement of a disputed claim, made by the Company solely for the purpose of avoiding the expense and inconvenience of further litigation. Neither this Release itself nor the consideration for this Release shall be deemed or construed at any time or for any purpose as an admission by the Company of liability or responsibility for any wrongdoing of any kind, whether statutory or otherwise. Neither shall Plaintiffs or any of them be deemed or considered a prevailing party for any purpose whatsoever.

The special master appointed by the court to recommend a formula for distribution of the $3.5 million Settlement Fund filed his report on March 2, 1983. The special master recommended a formula under which a portion of the Settlement Fund was divided equally among eligible class members ($860,000), and the remainder was apportioned among the members according to seniority and wage rates ($2,640,000). Utilization of the recommended formula would result in individual awards ranging from a low of approximately $1,500 to a high of $9,700. On April 5, 1983, the district court signed an order that approved the settlement and distribution of the Settlement Fund as recommended by the special master. In 1983, a total of 688 Singer Company employees, including plaintiff, received distributions from the Settlement Fund.

During the settlement discussions, neither representatives of Singer nor of Local 461 made tax treatment of the distributions from the Settlement Fund an item for negotiation. None of the settlement documents deal specifically with how either party is to treat for tax purposes the distribution from the Settlement Fund.

Representatives of Local 461 recommended to the special master that the most equitable formula for distribution of the Settlement Fund would be one based primarily on seniority and wage rates. Local 461 stated that the settlement, in essence, was intended to confer an additional severance pay benefit, and a succession of collective bargaining agreements with Singer invariably had based severance payments on seniority and wage rates.

Monies from the Settlement Fund were distributed in June 1983. At that time, differences as to tax treatment arose. Attorneys for Local 461 advised that the settlement amount would not be taxable, and that the payment could be excluded from gross income. Singer on the other hand took the opposing view and issued Form 1099s for all recipients of the distribution. On November 18, 1983, the attorney for Local 461 advised the union president that the settlement did not merely involve damages for breach of contract but also for Singer's tortious and fraudulent activities, and that the recovery of such damages should not be treated as wages or ordinary income.

IRS processing of returns of employees that received the Singer settlement distribution apparently was not the same for all distributees. Some returns which excluded the payment from income may not have been challenged. Final action on plaintiff's claim was unreasonably prolonged.

Plaintiff's return for 1983, filed April 10, 1984, reported the damage award of $5,474 in the district court case but did not include any amount of the award as income. The IRS advised plaintiff of a mathematical error shortly after the return was filed, and later on January 28, 1986, questioned plaintiff's 1983 tax return in a 30-day notice, CP-2000, issued on that date. The notice involved changes in interest income and medical deductions, as well as a change which took the Singer payment of $5,474 into adjusted gross income. On September 9, 1986, the IRS Brookhaven Service Center ordered that processing be suspended on approximately 35 cases in which the taxpayers had disagreed with CP-2000s that had picked up the Singer payments as gross income. The order noted that there was a question of whether the Singer distributions were fully or partially exempt from taxation under provisions of I.R.C. § 104, and that IRS District Counsel had been asked to provide a written opinion on the matter. Pursuant to this order, the IRS examiner on September 17, 1986, suspended further action on plaintiff's 1983 return.

On January 27, 1988, the IRS Assistant District Counsel responded to the request for a written opinion on the Singer case. The response was in the form of a "suggested sample explanation of adjustments to be used when issuing supports to taxpayers whose returns are under audit for the issue of compensation received as members of Local 461 ... from the damages award paid by the Singer Company." The explanation included a conclusion that the damages represent a distribution in the na-

ture of compensation and the award was not excludable.

On June 23, 1988, the IRS disallowed plaintiff's request for an adjustment of the tax that had been submitted on March 16, 1987, as an amended return and treated as an administrative claim for a refund. Plaintiff made payments on May 4, 1987, and on December 26, 1988, to cover assessed deficiencies. On March 8, 1989, the IRS advised plaintiff that the June 23, 1988, disallowance of the claim for adjustment was in effect, and told plaintiff that, to reopen the assessment, a claim must be filed by June 23, 1990, with the United States District Court or the United States Claims Court. Plaintiff's complaint was filed timely.

———

Disposition of plaintiff's claims requires a decision on whether under the IRC, the Singer payment qualifies as compensation for services or as damages received on account of personal injuries.

I.R.C. § 61(a)(1) provides:

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

26 U.S.C. § 61(a)(1) (1982). (References are to the Internal Revenue Code of 1954 in effect in the years in suit.)

■ The courts consistently have recognized that, in enacting this section, Congress intended to exercise "the full measure of its taxing power." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). Section 61 states a rule of inclusion. *Id.* at 430, 75 S.Ct. at 476. Accordingly, unless another portion of the Internal Revenue Code specifically excludes an accession to wealth from taxation, a taxpayer must include it in his income. The Court of Claims and the Federal Circuit so interpreted the statute. The term "compensation for services" within Section 61(a) covers any economic or financial benefit conferred in any form on the employee unless it is specifical-

ly exempted by another Code section. *Wheeler v. United States*, 768 F.2d 1333, 1335 (Fed.Cir.1985) (citing *Ritter v. United States*, 183 Ct.Cl. 875, 393 F.2d 823 (1985), *cert. denied*, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968).

I.R.C. § 104(a)(2) provides:

Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

  \*    \*    \*    \*    \*    \*

(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

The Treasury regulations provide: "The term 'damages received (whether by suit or agreement)' means an amount received (other than workman's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c) (1982).

A collective bargaining agreement negotiated by representatives of management and a labor organization under the National Labor Relations Act is an industrial compact. Collective bargaining agreements are enforced through a body of federal law fashioned by the courts. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The terms of a collective bargaining agreement are construed in accordance with contract principles so as to give effect to national labor policy. 29 U.S.C. §§ 151, 156–60 (1988); *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

■ The scope of Section 104(a)(2) has been defined in litigation. It is immaterial whether the taxpayer effected collection amicably or by resolving a dispute through compromise or litigation. It is the nature of the underlying claim that controls. *Spangler v. Commissioner*, 323 F.2d 913,

916 (9th Cir.1963). In order to ascertain the nature of the underlying claim, the court should start by examining the complaint. *See United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). If there has been prior litigation, the examination includes the opinion and orders of the other court. There are two elements to the exclusion from income: (1) the amount received must be damages, and (2) the amount received as damages must result from a personal injury or sickness. *Sparrow v. Commissioner,* 949 F.2d 434, 436 (D.C.Cir.1991). A taxpayer may exclude an award obtained from settlement only if he first shows that the amount received constitutes damages as that term has been traditionally defined, that is an award of monies recoverable in an action at law, and that the amount was received as a result of a personal injury. *Id.* Unless the payments made to the taxpayer were received on account of personal injury, the amount paid is included in gross income. The most important factor in making that determination, in the absence of an express personal injury settlement agreement, is the intent of the payor as to the purpose of making the payment. *Knuckles v. Commissioner,* 349 F.2d 610, 613 (10th Cir.1965). The Tax Court in its consideration of Section 104(a)(2) similarly has ruled that when determining whether a payment is made on account of personal injury, the most important factor, in the absence of express language in the settlement agreement, is the intent of the payor. The excludability of payments received under a settlement agreement depends upon the nature and the validity of the claim which was the actual basis for settlement. *Bent v. Commissioner,* 87 T.C. 236, 244 (1986).

The Singer payment was made pursuant to a settlement agreement negotiated in the context of on-going litigation. The district court had delivered an opinion and order which authorized appeals.

■ The nature of the district court action brought by Local 461 is not in dispute. In count 1, the complaint sought damages for breach of the collective bargaining agreement. In count 2, the complaint sought injunctive relief: (1) for misrepresentation on the ground that Singer never intended to fulfill its promised commitments, and (2) for fraud in an allegation that Singer fraudulently induced Local 461 and its members to accept reduced wage increases to grant give-backs and to make other substantial concessions during the course of the 1981 collective bargaining negotiations. The district court denied the request for a preliminary injunction on May 21, 1982, and the request for a permanent injunction on July 8, 1982, because Singer had not promised to refrain from discontinuing operations at Elizabeth.

Defendant argues that the denial of injunctive relief represents a finding that there was no basis for Local 461's allegations of misrepresentation and fraud. Defendant reads too much into the court's opinion and order. Injunctive relief was denied because the court found that Singer in the agreement had never promised to keep the plant open. The court's opinion and order did not rule on the misrepresentation and fraud contentions. In view of the court's finding that Singer had breached the collective bargaining agreement, there was no need for the court to determine whether misrepresentation and fraud in fact did occur. The settlement documents make it clear that all matters in litigation were withdrawn with prejudice and all claims were released and discharged.

The district court awarded damages for breach of contract. The court stated it would be grossly unfair to permit Singer, which admitted it had breached the 3–year collective bargaining agreement within months after it had been signed, to walk away from the workers without paying damages. The court viewed the damages as replacing lost compensation:

> In this way, the workers will be made whole; they will be no worse off than they would have been had they entered into a collective bargaining agreement without tendering "give-backs" and without extracting the promises contained in Appendix Z.

*Local 461 v. Singer Co.,* 540 F.Supp. at 450.

In their recommendations to the special master, representatives of Local 461 viewed the distributions as additional severance pay.

The settlement documents negotiated by representatives of Singer and Local 461 do not allocate any damages to misrepresentation and fraud. The settlement documents are silent as to the position of either party relative to tax treatment of the distributions.

In the absence of express language in the settlement agreement, the intent of the payor is an important factor in determination of the nature of a settlement. After the payments were made, Singer issued a Form 1099 to each of the distributees.

The payment from the Settlement Fund qualifies as damages under Section 104(a)(2). The payment, however, does not qualify as a payment for a personal injury.

It is probable that the IRS gave disparate treatment among the Singer employees with respect to the damages payments. Plaintiff contends he is the only employee who was taxed on the Singer payment. The record is not clear as to how many of the 688 employees in fact were taxed. Disparate treatment, however, is not a valid basis for a tax refund. A failure of the IRS to assess deficiencies against some taxpayers does not preclude an assessment against other taxpayers. *Wagner v. United States,* 181 Ct.Cl. 807, 387 F.2d 966, 972 (1967); *see also Carpenter v. United States,* 7 Cl.Ct. 732, 740 (1985); *Diebold, Inc. v. United States,* 16 Cl.Ct. 193, 213 (1989).

On the basis of the foregoing, defendant's motion for summary judgment must be ALLOWED. The Clerk is directed to dismiss the complaint. No costs.