UNITED STATES *v.* BURKE ET AL.

No. 91–42.   Argued January 21, 1992—Decided May 26, 1992

230

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, STEVENS, and KENNEDY, JJ., joined. SCALIA, J., *post*, p. 242, and SOUTER, J., *post*, p. 246, filed opinions concurring in the judgment. O'CONNOR, J., filed a dissenting opinion, in which THOMAS, J., joined, *post*, p. 248.

*Jeffrey P. Minear* argued the cause for the United States. On the briefs were *Solicitor General Starr, Assistant Attorney General Peterson, Deputy Solicitor General Wallace, Kent L. Jones, Ann Belanger Durney,* and *Bruce R. Ellisen.*

*Joseph E. Finley* argued the cause for respondents. With him on the brief was *Lucinda M. Finley.**

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case we decide whether a payment received in settlement of a backpay claim under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, is excludable from the recipient's gross income under § 104(a)(2) of the federal Internal Revenue Code, 26 U. S. C. § 104(a)(2), as "damages received . . . on account of personal injuries."

I

The relevant facts are not in dispute. In 1984, Judy A. Hutcheson, an employee of the Tennessee Valley Authority (TVA), filed a Title VII action in the United States District

---

*Briefs of *amici curiae* urging affirmance were filed for the American Association of Retired Persons by *Steven S. Zaleznick, Cathy Ventrell-Monsees, Raymond C. Fay,* and *Thomas F. Joyce;* for the American Civil Liberties Union et al. by *C. Cabell Chinnis, Jr., Alison C. Wetherfield, Martha F. Davis, Steven R. Shapiro, Isabelle Katz Pinzler, Julius L. Chambers,* and *Charles Stephen Ralston;* for the Equal Employment Advisory Council by *Robert E. Williams* and *Douglas S. McDowell;* for Equal Rights Advocates, Inc., by *Stephen V. Bomse, Nancy L. Davis,* and *Maria Blanco;* for Women Employed et al. by *Michael B. Erp, Mary K. O'Melveny,* and *Stephen G. Seliger;* for the National Employment Lawyers Association by *Robert B. Fitzpatrick;* and for the National Women's Law Center by *Walter J. Rockler.*

*Raymond C. Fay, Alan M. Serwer,* and *Thomas F. Joyce* filed a brief for the United Airlines Pilot Group as *amicus curiae.*

Court for the Eastern District of Tennessee alleging that TVA had discriminated unlawfully in the payment of salaries on the basis of sex. The Office and Professional Employees International Union, which represented the affected employees, intervened. Among the represented employees were respondents Therese A. Burke, Cynthia R. Center, and Linda G. Gibbs.

The complaint alleged that TVA had increased the salaries of employees in certain male-dominated pay schedules, but had not increased the salaries of employees in certain female-dominated schedules. In addition, the complaint alleged that TVA had lowered salaries in some female-dominated schedules. App. in No. 90–5607 (CA6) (hereinafter App.), pp. 28–32 (Second Amended Complaint). The plaintiffs sought injunctive relief as well as backpay for all affected female employees. *Id.*, at 33–34. The defendants filed a counterclaim against the union alleging, among other things, fraud, misrepresentation, and breach of contract. *Id.*, at 35.

After the District Court denied cross-motions for summary judgment, the parties reached a settlement. TVA agreed to pay $4,200 to Hutcheson and a total of $5 million for the other affected employees, to be distributed under a formula based on length of service and rates of pay. *Id.*, at 70–71, 76–77. Although TVA did not withhold taxes on the $4,200 for Hutcheson, it did withhold, pursuant to the agreement, federal income taxes on the amounts allocated to the other affected employees, including the three respondents here.[1]

---

[1] The pretax figures for the three respondents ranged from $573 to $928; the federal income tax withheld ranged from $114 to $186. 90–1 USTC ¶ 50,203, p. 83,747 (1990). Although respondents also sought a refund of taxes withheld from their incomes pursuant to the Federal Insurance Contributions Act (FICA), 26 U. S. C. § 3101 *et seq.,* neither the parties nor the courts below addressed the distinct analytical question whether backpay received under Title VII constitutes "wages" subject to taxation for FICA purposes. See 26 U. S. C. § 3101(a) (imposing percentage tax on "wages"), § 3121(a) (defining "wages" as "all remuneration for employ-

Respondents filed claims for refund of the taxes withheld from the settlement payments. The Internal Revenue Service (IRS) disallowed those claims. Respondents then brought a refund action in the United States District Court for the Eastern District of Tennessee, claiming that the settlement payments should be excluded from their respective gross incomes under § 104(a)(2) of the Internal Revenue Code as "damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." The District Court ruled that, because respondents sought and obtained only back wages due them as a result of TVA's discriminatory underpayments rather than compensatory or other damages, the settlement proceeds could not be excluded from gross income as "damages received . . . on account of personal injuries." 90–1 USTC ¶ 50,203 (1990).

The United States Court of Appeals for the Sixth Circuit, by a divided vote, reversed. 929 F. 2d 1119 (1991). The Court of Appeals concluded that exclusion under § 104(a)(2) turns on whether the injury and the claim are "personal and tort-like in nature." *Id.*, at 1121. "If the answer is in the affirmative," the court held, "then that is the beginning and end of the inquiry." *Id.*, at 1123 (internal quotation marks omitted). The court concluded that TVA's unlawful sex discrimination constituted a personal, tort-like injury to respondents, and rejected the Government's attempt to distinguish Title VII, which authorizes no compensatory or punitive damages,[2] from other statutes thought to redress personal injuries. See *id.*, at 1121–1123. Thus, the court held, the award of backpay pursuant to Title VII was excludable from gross income under § 104(a)(2).

---

ment"). Hence, we confine our analysis in this case to the federal income tax question.

[2] The Civil Rights Act of 1991 recently amended Title VII to authorize the recovery of compensatory and punitive damages in certain circumstances. See nn. 8 and 12, *infra.*

The dissent in the Court of Appeals, 929 F. 2d, at 1124, took the view that the settlement of respondents' claims for earned but unpaid wage differentials—wages that would have been paid and would have been subjected to tax absent TVA's unlawful discrimination—did not constitute compensation for "loss due to a tort," as required under § 104(a)(2). See *id.*, at 1126.

We granted certiorari to resolve a conflict among the Courts of Appeals concerning the exclusion of Title VII backpay awards from gross income under § 104(a)(2).[3]  502 U. S. 806 (1991).

## II

## A

The definition of gross income under the Internal Revenue Code sweeps broadly.  Section 61(a), 26 U. S. C. § 61(a), provides that "gross income means all income from whatever source derived," subject only to the exclusions specifically enumerated elsewhere in the Code.  As this Court has recognized, Congress intended through § 61(a) and its statutory precursors to exert "the full measure of its taxing power," *Helvering* v. *Clifford,* 309 U. S. 331, 334 (1940), and to bring within the definition of income any "accessio[n] to wealth." *Commissioner* v. *Glenshaw Glass Co.,* 348 U. S. 426, 431 (1955).  There is no dispute that the settlement awards in this case would constitute gross income within the reach of § 61(a).  See Brief for Respondents 9–10.

The question, however, is whether the awards qualify for special exclusion from gross income under § 104(a), which

---

[3] Compare the Sixth Circuit's opinion in this case with *Sparrow* v. *Commissioner,* 292 U. S. App. D. C. 259, 949 F. 2d 434 (1991) (Title VII backpay awards not excludable), and *Thompson* v. *Commissioner,* 866 F. 2d 709 (CA4 1989) (same).  See also *Johnston* v. *Harris County Flood Control Dist.,* 869 F. 2d 1565, 1579–1580 (CA5 1989) (noting, for purposes of district court consideration of tax liability in computing damages, that Title VII backpay awards may not be excluded under § 104(a)(2)), cert. denied, 493 U. S. 1019 (1990).

provides in relevant part that "gross income does not include—"

> "(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness . . . ."[4]

Neither the text nor the legislative history of § 104(a)(2) offers any explanation of the term "personal injuries."[5] Since 1960, however, IRS regulations formally have linked identification of a personal injury for purposes of § 104(a)(2) to traditional tort principles: "The term 'damages received (whether by suit or agreement)' means an amount received . . . through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 CFR § 1.104–1(c) (1991). See *Threlkeld* v. *Commissioner*, 87 T. C. 1294, 1305 (1986) ("The essential element of an exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor. . . . As a result, common law tort law concepts are helpful in deciding whether a taxpayer is being compensated for a 'personal injury'") (internal quotation marks omitted), aff'd, 848 F. 2d 81 (CA6 1988).

A "tort" has been defined broadly as a "civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts 2 (1984). Remedial principles thus figure prominently in the definition and conceptualization of torts.

---

[4] Section 104, entitled "Compensation for injuries or sickness," provides similar exclusions from gross income for amounts received for personal injuries or sickness under worker's compensation programs (§ 104(a)(1)), accident or health insurance (§ 104(a)(3)), and certain federal pension programs (§ 104(a)(4)).

[5] See, *e. g.,* H. R. Rep. No. 1337, 83d Cong., 2d Sess., 15 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess., 15–16 (1954).

See R. Heuston, Salmond on the Law of Torts 9 (12th ed. 1957) (noting that "an action for damages" is "an essential characteristic of every true tort," and that, even where other relief, such as an injunction, may be available, "in all such cases it is solely by virtue of the right to damages that the wrong complained of is to be classed as a tort"). Indeed, one of the hallmarks of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff "fairly for injuries caused by the violation of his legal rights." *Carey* v. *Piphus,* 435 U. S. 247, 257 (1978). Although these damages often are described in compensatory terms, see *Memphis Community School Dist.* v. *Stachura,* 477 U. S. 299, 306 (1986), in many cases they are larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff, and thus redress intangible elements of injury that are "deemed important, even though not pecuniary in [their] immediate consequence[s]." D. Dobbs, Law of Remedies 136 (1973). Cf. *Molzof* v. *United States,* 502 U. S. 301, 306–307 (1992) (compensatory awards that exceed actual loss are not prohibited as "punitive" damages under the Federal Tort Claims Act).

For example, the victim of a physical injury may be permitted, under the relevant state law, to recover damages not only for lost wages, medical expenses, and diminished future earning capacity on account of the injury, but also for emotional distress and pain and suffering. See Dobbs, at 540–551; *Threlkeld* v. *Commissioner,* 87 T. C., at 1300. Similarly, the victim of a "dignitary" or nonphysical tort[6] such as defa-

---

[6] Although the IRS briefly interpreted § 104(a)(2)'s statutory predecessor, § 213(b)(6) of the Revenue Act of 1918, 40 Stat. 1066, to restrict the scope of personal injuries to physical injuries, see S. 1384, 2 Cum. Bull. 71 (1920) (determining, on basis of statutory text and "history of the legislation" that "it appears more probable . . . that the term 'personal injuries,' as used therein means physical injuries only"); Knickerbocker, The Income Tax Treatment of Damages, 47 Cornell L. Q. 429, 431 (1962), the courts and the IRS long since have recognized that § 104(a)(2)'s reference to "personal injuries" encompasses, in accord with common judicial parlance and con-

mation may recover not only for any actual pecuniary loss (*e. g.*, loss of business or customers), but for "impairment of reputation and standing in the community, personal humilia-

ceptions, see Black's Law Dictionary 786 (6th ed. 1990); 1 S. Speiser, C. Krause, & A. Gans, American Law of Torts 6 (1983), nonphysical injuries to the individual, such as those affecting emotions, reputation, or character, as well. See, *e. g.*, *Rickel* v. *Commissioner*, 900 F. 2d 655, 658 (CA3 1990) (noting that "it is judicially well-established that the meaning of 'personal injuries' in this context encompasses both nonphysical as well as physical injuries"); *Roemer* v. *Commissioner*, 716 F. 2d 693, 697 (CA9 1983) (noting that § 104(a)(2) "says nothing about physical injuries," and that "[t]he ordinary meaning of a personal injury is not limited to a physical one"); Rev. Rule 85–98, 1985–2 Cum. Bull. 51 (holding that the § 104(a)(2) exclusion "makes no distinction between physical or emotional injuries"); 1972–2 Cum. Bull. 3, acquiescing in *Seay* v. *Commissioner*, 58 T. C. 32, 40 (1972) (holding that damages received for "personal embarrassment," "mental strain," and injury to "personal reputation" may be excluded under § 104(a)(2), and noting prior rulings regarding alienation of affections and defamation). See also B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts 13–11 (2d ed. 1989); Burke & Friel, Tax Treatment of Employment-Related Personal Injury Awards, 50 Mont. L. Rev. 13, 21 (1989).

Congress' 1989 amendment to § 104(a)(2) provides further support for the notion that "personal injuries" includes physical as well as nonphysical injuries. Congress rejected a bill that would have limited the § 104(a)(2) exclusion to cases involving "physical injury or physical sickness." See H. R. Rep. No. 101–247, pp. 1354–1355 (1989) (describing proposed § 11641 of H. R. 3299, 101st Cong., 1st Sess. (1989)). At the same time, Congress amended § 104(a) to allow the exclusion of *punitive* damages only in cases involving "physical injury or physical sickness." Pub. L. 101–239, § 7641(a), 103 Stat. 2379, 26 U. S. C. § 104(a) (1988 ed., Supp. I). The enactment of this limited amendment addressing only punitive damages shows that Congress assumed that other damages (*i. e.*, compensatory) would be excluded in cases of both physical *and* nonphysical injury.

Notwithstanding JUSTICE SCALIA's contention in his separate opinion that the term "personal injuries" must be read as limited to "health"-related injuries, see *post*, at 244, the foregoing authorities establish that § 104(a)(2) in fact encompasses a broad range of physical and nonphysical injuries to personal interests. JUSTICE SCALIA implicitly acknowledges that the plain meaning of the statutory phrase can support this well-established view. See *post*, at 243–244.

tion, and mental anguish and suffering." *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 350 (1974). See also Dobbs, at 510–520. Furthermore, punitive or exemplary damages are generally available in those instances where the defendant's misconduct was intentional or reckless. See *id.*, at 204–208; *Molzof* v. *United States, supra.*

We thus agree with the Court of Appeals' analysis insofar as it focused, for purposes of § 104(a)(2), on the nature of the claim underlying respondents' damages award. See 929 F. 2d, at 1121; *Threlkeld* v. *Commissioner*, 87 T. C., at 1305. Respondents, for their part, agree that this is the appropriate inquiry, as does the dissent. See Brief for Respondents 9–12; *post*, at 250.[7] In order to come within the § 104(a)(2) income exclusion, respondents therefore must show that Title VII, the legal basis for their recovery of backpay, redresses a tort-like personal injury in accord with the foregoing principles. We turn next to this inquiry.

## B

Title VII of the Civil Rights Act of 1964[8] makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

---

[7] The dissent nonetheless contends that we "misapprehen[d] the nature of the inquiry required by § 104(a)(2) and the IRS regulation" by "[f]ocusing on [the] remedies" available under Title VII. See *post*, at 249–250. As discussed above, however, the concept of a "tort" is inextricably bound up with remedies—specifically damages actions. Thus, we believe that consideration of the remedies available under Title VII is critical in determining the "nature of the statute" and the "type of claim" brought by respondents for purposes of § 104(a)(2). See *post*, at 250.

[8] As discussed below, the Civil Rights Act of 1991, Pub. L. 102–166, 105 Stat. 1071, amended Title VII in significant respects. Respondents do not contend that these amendments apply to this case. See Tr. of Oral Arg. 35–36. We therefore examine the law as it existed prior to November 21, 1991, the effective date of the 1991 Act. See Pub. L. 102–166, § 402(a), 105 Stat. 1099. Unless otherwise indicated, all references are to the "unamended" Title VII.

such individual's race, color, religion, sex, or national origin."
42 U. S. C. § 2000e–2(a)(1). If administrative remedies are
unsuccessful, an aggrieved employee may file suit in a dis-
trict court, § 2000e–5(f)(1), although the Courts of Appeals
have held that Title VII plaintiffs, unlike ordinary tort plain-
tiffs, are not entitled to a jury trial. See, *e. g., Johnson* v.
*Georgia Highway Express, Inc.*, 417 F. 2d 1122, 1125 (CA5
1969). See also *Curtis* v. *Loether*, 415 U. S. 189, 192–193
(1974) (describing availability of jury trials for common-law
forms of action); *id.*, at 196–197, n. 13 (citing Title VII cases).
If the court finds that the employer has engaged in an unlaw-
ful employment practice, it may enjoin the practice and
"order such affirmative action as may be appropriate, which
may include, but is not limited to, reinstatement or hiring of
employees, with or without back pay . . . or any other equita-
ble relief as the court deems appropriate." § 2000e–5(g).

It is beyond question that discrimination in employment
on the basis of sex, race, or any of the other classifications
protected by Title VII is, as respondents argue and this
Court consistently has held, an invidious practice that causes
grave harm to its victims. See Brief for Respondents
35–39; *Griggs* v. *Duke Power Co.*, 401 U. S. 424 (1971). The
fact that employment discrimination causes harm to individ-
uals does not automatically imply, however, that there exists
a tort-like "personal injury" for purposes of federal income
tax law.

Indeed, in contrast to the tort remedies for physical and
nonphysical injuries discussed above, Title VII does not
allow awards for compensatory or punitive damages; instead,
it limits available remedies to backpay, injunctions, and other
equitable relief. See § 2000e–5(g); *Patterson* v. *McLean
Credit Union*, 491 U. S. 164, 182, n. 4 (1989) (noting that
a plaintiff in a Title VII action is "limited to a recovery
of backpay"); *Great American Fed. Sav. & Loan Assn.* v.
*Novotny*, 442 U. S. 366, 374–375 (1979); *Sparrow* v. *Commis-
sioner*, 292 U. S. App. D. C. 259, 262–263, 949 F. 2d 434, 437–

438 (1991) (collecting cases). An employee wrongfully discharged on the basis of sex thus may recover only an amount equal to the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits;[9] similarly, an employee wrongfully denied a promotion on the basis of sex, or, as in this case, wrongfully discriminated against in salary on the basis of sex, may recover only the differential between the appropriate pay and actual pay for services performed, as well as lost benefits.

The Court previously has observed that Title VII focuses on "legal injuries of an economic character," see *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 418 (1975), consisting specifically of the unlawful deprivation of full wages earned or due for services performed, or the unlawful deprivation of the opportunity to earn wages through wrongful termination. The remedy, correspondingly, consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination. See *id.*, at 421 (citing 118 Cong. Rec. 7168 (1972)). Nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (*e. g.*, a ruined credit rating). See *Walker* v. *Ford Motor Co.*, 684 F. 2d 1355, 1364–1365, n. 16 (CA11 1982).

No doubt discrimination could constitute a "personal injury" for purposes of § 104(a)(2) if the relevant cause of action evidenced a tort-like conception of injury and remedy. Cf. *Curtis* v. *Loether*, 415 U. S., at 195–196, n. 10 (noting that "under the logic of the common law development of a law of

---

[9] Some courts have allowed Title VII plaintiffs who were wrongfully discharged and for whom reinstatement was not feasible to recover "front pay" or future lost earnings. See, *e. g.*, *Shore* v. *Federal Express Corp.*, 777 F. 2d 1155, 1158–1160 (CA6 1985).

insult and indignity, racial discrimination might be treated as a dignitary tort" (internal quotation marks omitted)). Indeed, the circumscribed remedies available under Title VII stand in marked contrast not only to those available under traditional tort law, but under other federal antidiscrimination statutes, as well.[10] For example, Rev. Stat. § 1977, 42 U. S. C. § 1981, permits victims of race-based employment discrimination to obtain a jury trial at which "both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages" may be awarded. *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 460 (1975). The Court similarly has observed that Title VIII of the Civil Rights Act of 1968, whose fair housing provisions allow for jury trials and for awards of compensatory and punitive damages, "sounds basically in tort" and "contrasts sharply" with the relief available under Title VII. *Curtis* v. *Loether*, 415 U. S., at 195, 197; 42 U. S. C. § 3613(c).[11]

---

[10] Title VII's remedial scheme was expressly modeled on the backpay provision of the National Labor Relations Act. See *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 419–420, and n. 11 (1975); 29 U. S. C. § 160(c) (Board shall order persons to "cease and desist" from unfair labor practices and to take "affirmative action including reinstatement of employees with or without back pay"). This Court previously has held that backpay awarded under the Labor Act to an unlawfully discharged employee constitutes "wages" for purposes of the Social Security Act. See *Social Security Board* v. *Nierotko*, 327 U. S. 358 (1946).

[11] Respondents' attempts to prove that Title VII redresses a personal injury by relying on this Court's characterizations of other antidiscrimination statutes are thus unpersuasive in light of those statutes' differing remedial schemes. For example, respondents' reliance on *Goodman* v. *Lukens Steel Co.*, 482 U. S. 656 (1987), is misplaced, as that case involved the interpretation of § 1981. See Brief for Respondents 35–37. Respondents' attempt to apply the Court's statement in *Curtis* v. *Loether*, 415 U. S., at 195, that Title VIII "sounds basically in tort" to the Title VII context similarly fails. See Brief for Respondents 32. Indeed, *Curtis* itself distinguishes Title VII from Title VIII on a host of different grounds. See 415 U. S., at 196–197. The dissent commits the same error as respondents in attempting to analogize suits arising under Title VII to

Notwithstanding a common-law tradition of broad tort damages and the existence of other federal antidiscrimination statutes offering similarly broad remedies, Congress declined to recompense Title VII plaintiffs for anything beyond the wages properly due them—wages that, if paid in the ordinary course, would have been fully taxable. See L. Frolik, Federal Tax Aspects of Injury, Damage, and Loss 70 (1987). Thus, we cannot say that a statute such as Title VII,[12] whose sole remedial focus is the award of back wages, redresses a tort-like personal injury within the meaning of § 104(a)(2) and the applicable regulations.[13]

---

those involving other federal antidiscrimination statutes for purposes of § 104(a)(2). See *post*, at 250–252.

[12] Respondents contend that Congress' recent expansion of Title VII's remedial scope supports their argument that Title VII claims are inherently tort-like in nature. See Brief for Respondents 34. Under the Civil Rights Act of 1991, victims of intentional discrimination are entitled to a jury trial, at which they may recover compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," as well as punitive damages. See Pub. L. 102–166, 105 Stat. 1073. Unlike respondents, however, we believe that Congress' decision to permit jury trials and compensatory and punitive damages under the amended Act signals a marked change in its conception of the injury redressable by Title VII, and cannot be imported back into analysis of the statute as it existed at the time of this lawsuit. See, *e. g.*, H. R. Rep. No. 102–40, pt. 1, pp. 64–65 (1991) (Report of Committee on Education and Labor) ("Monetary damages also are necessary to make discrimination victims whole for the terrible injury to their careers, to their mental and emotional health, and to their self-respect and dignity"); *id.*, pt. 2, p. 25 (Report of Committee on the Judiciary) ("The limitation of relief under Title VII to equitable remedies often means that victims of intentional discrimination may not recover for the very real effects of the discrimination").

[13] Our holding that damages received in settlement of a Title VII claim are not properly excludable under § 104(a)(2) finds support in longstanding rulings of the IRS. See, *e. g.*, Rev. Rule 72–341, 1972–2 Cum. Bull. 32 (payments by corporation to its employees in settlement of Title VII suit must be included in the employees' gross income, as the payments "were based on compensation that they otherwise would have received").

Accordingly, we hold that the backpay awards received by respondents in settlement of their Title VII claims are not excludable from gross income as "damages received . . . on account of personal injuries" under § 104(a)(2). The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE SCALIA, concurring in the judgment.

Section 104(a)(2) of the Internal Revenue Code excludes from gross income "the amount of any damages received . . . *on account of personal injuries or sickness.*" 26 U. S. C. § 104(a)(2) (emphasis added). The Court accepts at the outset of its analysis the Internal Revenue Service (IRS) regulation (dating from 1960) that identifies "personal injuries" under this exclusion with the violation of, generically, "tort or tort type rights," 25 Fed. Reg. 11490 (1960); 26 CFR § 1.104–1(c) (1991)[1]—thus extending the coverage of the provision to " 'dignitary' or nonphysical tort[s] such as defamation," *ante*, at 235–236 (footnote omitted). Thereafter, the opinion simply considers the criterion for determining whether "tort or tort type rights" are at stake, the issue on which it disagrees with the dissent.

In my view there is no basis for accepting, without qualification, the IRS' "tort rights" formulation, since it is not within the range of reasonable interpretation of the statutory text. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–845 (1984). In isolation, I suppose, the term "personal injuries" can be read to encompass injury to any noncontractual interest " 'for which the court will provide a remedy in the form of an action for

---

[1] Though this regulation purports expressly to define only the term "damages received," 26 CFR § 1.104–1(c) (1991), and not the succeeding term we are called upon to interpret today ("personal injuries"), the IRS has long treated the regulation as descriptive of the ambit of § 104(a)(2) as a whole. See, *e. g.*, Rev. Rul. 85–98, 1985–2 Cum. Bull. 51; Brief for United States 22–23.

damages.'" *Ante*, at 234 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts 2 (1984)). That is assuredly not, however, the only permissible meaning of the term. Indeed, its more common connotation embraces only physical injuries to the person (as when the consequences of an auto accident are divided into "personal injuries" and "property damage"),[2] or perhaps, in addition, injuries to a person's mental health.

> "Under the American decisional law, the phrase 'personal injury' denotes primarily an injury to the body of a person. At least some of the courts, however, have not narrowly limited the term, and have concluded that a personal injury or an injury to the person, within the meaning of the law, does not necessarily involve physical contact with the person injured or mere bodily or physical injuries, but may embrace all actionable injuries to the individual himself." 1 S. Speiser, C. Krause, & A. Gans, American Law of Torts 6 (1983).

See also Black's Law Dictionary 786 (6th ed. 1990).

In deciding whether the words go beyond their more narrow and more normal meaning here, the critical factor, in my view, is the fact that "personal injuries" appears not in isolation but as part of the phrase "personal injuries or sickness." As the Court has said repeatedly, "[t]he maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki* v. *G. D. Searle & Co.*, 367 U. S. 303, 307 (1961). The term "sickness" connotes a "[d]iseased condition; illness; [or] ill health," Webster's New International Dictionary 2329–2330 (2d ed. 1950), and I think that its companion must similarly be read

---

[2] As it happens, this was the IRS' original understanding with regard to § 104(a)(2)'s predecessor, § 213(b)(6) of the Revenue Act of 1918, 40 Stat. 1066. See, *e. g.*, S. 1384, 2 Cum. Bull. 71 (1920).

to connote injuries to physical (or mental) health. It is almost as odd to believe that the first part of the phrase "personal injuries or sickness" encompasses defamation, as it would be to believe that the first part of the phrase "five feet, two inches" refers to pedal extremities.

The commonsense interpretation I suggest is supported as well by several other factors. First, the term "personal injuries or sickness" is used three other times in § 104(a), and in each instance its sense is necessarily limited to injuries to physical or mental health. See § 104(a)(1) (gross income does not include "amounts received under workmen's compensation acts as compensation *for personal injuries or sickness*" (emphasis added)); § 104(a)(3) (gross income does not include "amounts received through accident or health insurance *for personal injuries or sickness*" (emphasis added)); § 104(a)(4) (gross income does not include "amounts received as a pension, annuity, or similar allowance *for personal injuries or sickness* resulting from active service in the armed forces . . . or as a disability annuity payable under . . . the Foreign Service Act" (emphasis added)). When, sandwiched in among these provisions, one sees an exclusion for "the amount of any damages received . . . on account of personal injuries or sickness," one has little doubt what is intended, and it is not recovery for defamation (or other invasions of "personal" interests that do not, of necessity, harm the victim's physical or mental health). Second, the provision at issue here is a tax *exemption,* a category of text for which we have adopted a rule of narrow construction. See, *e. g., United States* v. *Centennial Savings Bank FSB,* 499 U. S. 573, 583–584 (1991).[3]

---

[3] Congress amended § 104(a), in 1989, to provide prospectively that § 104(a)(2) shall not shelter from taxation "punitive damages in connection with a case not involving physical injury or physical sickness." Pub. L. 101–239, § 7641(a), 103 Stat. 2379, 26 U. S. C. § 104(a) (1988 ed., Supp. I); see *id.,* § 7641(b). As thus amended it is clear (whereas previously it was not) that "personal injuries or sickness" includes not only physical, but

The question, then, is whether the settlement payments at issue in this case were "received . . . *on account of personal injuries*"—viz., "on account of" injuries to the recipients' physical or mental health—so as to qualify for exclusion under § 104(a)(2). I think not. Though it is quite possible for a victim of race- or sex-based employment discrimination to suffer psychological harm, her entitlement to backpay under Title VII does not depend on such a showing. *Whether or not* she has experienced the sort of disturbances to her mental health that the phrase "personal injuries" describes, a Title VII claimant is entitled to be "restor[ed] . . . to the wage and employment positio[n] [she] would have occupied absent the unlawful discrimination." *Ante*, at 239; see *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 420–421 (1975) ("[G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy . . ."). The only harm that Title VII dignifies with the status of redressable *legal* injury is the antecedent economic deprivation that produced the Title VII violation in the first place. See *id.*, at 418 ("Title VII deals with legal injuries of an economic character . . ."). I thus conclude that respondents did not receive their settlement payments (in respect of backpay) "on account of personal injuries" within the meaning of § 104(a)(2), and would reverse the judgment of the Court of Appeals.

It is true that the Secretary's current regulation, at least as it has been applied by the IRS, see n. 1, *supra*, contradicts the interpretation of the statute I have set forth above. But while agencies are bound by those regulations that are issued within the scope of their lawful discretion (at least until the regulations are modified or rescinded through appro-

---

also psychological harm or disease; nevertheless, the amendment does not require the phrase unnaturally to be extended to injuries that affect neither mind nor body.

priate means, see, *e. g., Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.,* 463 U. S. 29, 41–42 (1983)), they cannot be bound by regulations that are contrary to law. Otherwise, the Secretary of the Treasury would effectively be empowered to repeal taxes that the Congress enacts. Cf. *Office of Personnel Management* v. *Richmond,* 496 U. S. 414, 427–428 (1990). The existence of an ever-so-rare "taxpayer-friendly" Treasury regulation (however inconsistent with the statutory text) may be relevant to whether penalties for blameworthy failure to pay can be assessed, see *Cheek* v. *United States,* 498 U. S. 192 (1991), but it cannot control the determination whether the tax was due and owing according to Congress' command.

Finally (and relatedly), I must acknowledge that the basis for reversing the Court of Appeals on which I rely has not been argued by the United States, here or below. The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one. See *United States* v. *Pryce,* 291 U. S. App. D. C. 84, 96, 938 F. 2d 1343, 1355 (1991) (Silberman, J., dissenting in part). Even so, there must be enough play in the joints that the Supreme Court need not render judgment on the basis of a rule of law whose nonexistence is apparent on the face of things, simply because the parties agree upon it—particularly when the judgment will reinforce error already prevalent in the system. See, *e. g., Arcadia* v. *Ohio Power Co.,* 498 U. S. 73 (1990). I think that is the case here.

For the foregoing reasons, I concur in the judgment.

JUSTICE SOUTER, concurring in the judgment.

Respondents may not exclude their recovery from taxable income unless their action was one "based upon tort or tort type rights." 26 CFR § 1.104–1(c) (1991). On the reasonable assumption that the regulation reflects the broad dichot-

omy between contract and tort posited by the dissent, *post*, at 249–252, there are good reasons to put a Title VII claim on the tort side of the line. There are definite parallels between, say, a defamation action, which vindicates the plaintiff's interest in good name, and a Title VII suit, which arguably vindicates an interest in dignity as a human being entitled to be judged on individual merit. Our cases have, indeed, recognized parallels (though for different purposes) between tort claims and claims under antidiscrimination statutes other than Title VII. See *Goodman* v. *Lukens Steel Co.*, 482 U. S. 656, 661 (1987) (similarity between claim under 42 U. S. C. § 1981 and personal-injury claim for purposes of determining applicable statute of limitations); *Wilson* v. *Garcia*, 471 U. S. 261, 277–278 (1985) (same for 42 U. S. C. § 1983).

The reasons do not go solely to that one side, however. While I do not join the majority in holding that the tort-like character of a claim should turn solely on whether the plaintiff can recover for "intangible elements of injury," *ante*, at 235, I agree that Title VII's limitation of recovery to lost wages ("back pay") counts against holding respondents' statutory action to be "tort type." Tort actions, it cannot be gainsaid, commonly (though not invariably\*) permit recovery for intangible injury. *Ante*, at 234–237. Backpay, on the other hand, is quintessentially a contractual measure of damages.

A further similarity between Title VII and contract law, at least in the context of an existing employment relationship, is the great resemblance of rights guaranteed by Title VII to those commonly arising under the terms and condi-

---

\*In those States that have barred recovery in tort for "intangible elements of injury," see, *e. g.*, N. J. Stat. Ann. § 59:9–2(d) (West 1982) (action against public entity or employee); Wash. Rev. Code § 4.20.046(1) (1989) (action by estate of deceased), the modified action is still fairly described as one "based upon tort rights," and certainly is an "action based upon tort-type rights."

tions of an employment contract: Title VII's ban on discrimination is easily envisioned as a contractual term implied by law. See *Hishon* v. *King & Spalding*, 467 U. S. 69, 74–75, n. 6 (1984) ("Even if the employment contract did not afford a basis for an implied condition that the [decision to promote] would be fairly made on the merits, Title VII itself would impose such a requirement"); *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 177 (1989) ("[T]he performance of established contract obligations and the conditions of continuing employment [are] matters . . . governed by state contract law and Title VII"). Indeed, it has been suggested that "the rights guaranteed by Title VII *are* implied terms of every employment contract . . . ." Shanor & Marcosson, Battleground for a Divided Court: Employment Discrimination in the Supreme Court, 1988–89, 6 Lab. Law. 145, 174, n. 118 (1990) (emphasis added).

In sum, good reasons tug each way. It is needless to decide which tug harder, however, for the outcome in this case follows from the default rule of statutory interpretation that exclusions from income must be narrowly construed. See *United States* v. *Centennial Savings Bank FSB*, 499 U. S. 573, 583–584 (1991); *Commissioner* v. *Jacobson*, 336 U. S. 28, 49 (1949). That is, an accession to wealth is not to be held excluded from income unless some provision of the Internal Revenue Code clearly so entails. There being here no clear application of 26 U. S. C. § 104(a)(2) as interpreted by the Treasury regulation, I concur in the judgment.

JUSTICE O'CONNOR, with whom JUSTICE THOMAS joins, dissenting.

The Court holds that respondents, unlike most plaintiffs who secure compensation after suffering personal injury, must pay tax on their recoveries for alleged discrimination because suits under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 Stat. § 2000e *et seq.*, do not involve "tort type rights." This is so, the Court says, because

"Congress declined to recompense Title VII plaintiffs for anything beyond the wages properly due them." *Ante*, at 241. I cannot agree. In my view, the remedies available to Title VII plaintiffs do not fix the character of the right they seek to enforce. The purposes and operation of Title VII are closely analogous to those of tort law, and that similarity should determine excludability of recoveries for personal injury under 26 U. S. C. § 104(a)(2).

## I

Section 104(a)(2) allows taxpayers to exclude from gross income "damages received . . . on account of personal injuries or sickness." The Court properly defers to an Internal Revenue Service (IRS) regulation that reasonably interprets the words "damages received" to mean "an amount received . . . through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 CFR § 1.104–1(c) (1991). See *ante*, at 234; *United States* v. *Correll*, 389 U. S. 299 (1967). Therefore, respondents may exclude from gross income any amount they received as a result of asserting a "tort type" right to recover for personal injury.

The Court appears to accept that discrimination in the workplace causes personal injury cognizable for purposes of § 104(a)(2), see *ante*, at 239, and there can be little doubt about this point. See *Goodman* v. *Lukens Steel Co.*, 482 U. S. 656, 661 (1987) ("[R]acial discrimination . . . is a fundamental injury to the individual rights of a person"); *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 265 (1989) (O'CONNOR, J., concurring in judgment) ("[W]hatever the final outcome of a decisional process, the inclusion of race or sex as a consideration within it harms both society and the individual"). I disagree only with the Court's further holding that respondents' action did not assert tort-like rights because Congress limited the remedies available to Title VII plaintiffs. Focusing on remedies, it seems to me, misapprehends the

nature of the inquiry required by § 104(a)(2) and the IRS regulation. The question whether Title VII suits are based on the same sort of rights as a tort claim must be answered with reference to the nature of the statute and the type of claim brought under it.

Title VII makes employment discrimination actionable without regard to contractual arrangements between employer and employee. Functionally, the law operates in the traditional manner of torts: Courts award compensation for invasions of a right to be free from certain injury in the workplace. Like damages in tort suits, moreover, monetary relief for violations of Title VII serves a public purpose beyond offsetting specific losses. "It is the reasonably certain prospect of a backpay award that 'provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of [discrimination].'" *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 417–418 (1975) (quoting *United States* v. *N. L. Industries, Inc.,* 479 F. 2d 354, 379 (CA8 1973)).

Such a scheme fundamentally differs from contract liability, which "is imposed by the law for the protection of a single, limited interest, that of having the promises of others performed." W. Prosser, Law of Torts 5 (4th ed. 1971). Title VII liability also is distinguishable from quasi-contractual liability, which "is created for the prevention of unjust enrichment of one man at the expense of another, and the restitution of benefits which in good conscience belong to the plaintiff." *Ibid.* It is irrelevant for purposes of Title VII that an employer profits from discriminatory practices; the purpose of liability is not to reassign economic benefits to their rightful owner, but to compensate employees for injury they suffer and to "eradicat[e] discrimination throughout the economy." *Albemarle Paper, supra,* at 421.

This Court has found statutory causes of action for discrimination analogous to tort suits on prior occasions, but

has not suggested that this comparison turns on the specific monetary relief available. In *Wilson* v. *Garcia*, 471 U. S. 261 (1985), we considered which state statute of limitations is most appropriately applied to a claim brought under 42 U. S. C. § 1983. The Court answered this question by looking not to the remedies afforded a § 1983 plaintiff, but to "the essence of the claim" and "the elements of the cause of action." *Id.,* at 268. Of greatest significance was the fact that Congress designed the Civil Rights Act of 1871 to provide a civil remedy for violations of constitutional rights in the postwar South. Because Congress was concerned with harms that "plainly sounded in tort," it only remained for the Court to select the best comparison from among "a broad range of potential tort analogies, from injuries to property to infringements of individual liberty." *Id.,* at 277. In concluding that the closest state-law equivalent to a § 1983 suit is a tort claim for personal injury, the Court once more emphasized the rights made enforceable under federal law:

> "The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every *'person'* subject to the jurisdiction of any of the several States. The Constitution's command is that all *'persons'* shall be accorded the full privileges of citizenship . . . . A violation of that command is an injury to the individual rights of the person." *Ibid.* (footnote omitted).

When asked in *Goodman* v. *Lukens Steel Co., supra,* to determine the appropriate state analogue to a suit under 42 U. S. C. § 1981, the Court again considered the rights protected by federal law rather than the recovery that could be had by a plaintiff. As in *Wilson,* the tort-like nature of a § 1981 claim was clear. See 482 U. S., at 661. Accordingly, the Court quickly turned to rejecting the view that § 1981 suits are more similar to tort actions for interference with

contractual rights than to claims based on personal injury. The Court noted that while § 1981 deals partially with contracts, it is "part of a federal law barring racial discrimination, which . . . is a fundamental injury to the individual rights of a person." *Ibid.* Moreover, the economic consequences of § 1981 "flo[w] from guaranteeing the personal right to engage in economically significant activity free from racially discriminatory interference." *Id.*, at 661–662. The most analogous state statute of limitations in a § 1981 action is, therefore, the one governing personal injury suits. *Id.*, at 662.

*Wilson* and *Goodman* held federal civil rights suits analogous to personal injury tort actions not at all because of the damages available to civil rights plaintiffs, but because federal law protected individuals against tort-like personal injuries. Discrimination in the workplace being no less injurious than discrimination elsewhere, the rights asserted by persons who sue under Title VII are just as tort-like as the rights asserted by plaintiffs in actions brought under §§ 1981 and 1983.

## II

The Court offers three additional reasons why respondents' recoveries should be taxed. First, it notes that amounts awarded under Title VII would have been received as taxable wages if there had been no discrimination, leaving the impression that failing to tax these recoveries would give victims of employment discrimination a windfall. See *ante,* at 241, and n. 13. Affording victims of employment discrimination this benefit, however, simply puts them on an equal footing with others who suffer personal injury. For example, "[i]f a taxpayer receives a damage award for a physical injury, which almost by definition is personal, the entire award is excluded from income even if all or a part of the recovery is determined with reference to the income lost because of the injury." *Threlkeld* v. *Commissioner,* 87 T. C. 1294, 1300 (1986), aff'd, 848 F. 2d 81 (CA6 1988). I see no

inequity in treating Title VII litigants like other plaintiffs who suffer personal injury.

Second, the Court intimates that the unavailability of jury trials to Title VII plaintiffs bears on determining the nature of the claim they bring. See *ante*, at 240, 241, n. 12. Here, the Court apparently assumes the answer to a question we have expressly declined to address on recent occasions. See *Lytle* v. *Household Mfg., Inc.*, 494 U. S. 545, 549, n. 1 (1990) ("This Court has not ruled on the question whether a plaintiff seeking relief under Title VII has a right to a jury trial. . . . [W]e express no opinion on that issue here"); *Teamsters* v. *Terry*, 494 U. S. 558, 572 (1990). More importantly, the Court does not explain what relevance the availability of jury trials holds for the question of excludability under § 104(a)(2). The suggestion is that Title VII recoveries are not excludable under this section because employment discrimination suits are equitable rather than legal in nature. Cf. *Sparrow* v. *Commissioner*, 292 U. S. App. D. C. 259, 949 F. 2d 434 (1991). That argument, however, ignores the very IRS regulation the Court purports to apply. Instead of construing the statutory term "damages" as a reference to the remedy traditionally available in actions at law, the IRS defines "damages" to mean "an amount" recovered through prosecution or settlement of a "legal *suit or action* based upon *tort or tort type* rights." 26 CFR § 1.104–1(c) (1991) (emphasis added). This inclusive definition renders the historical incidents of "actions at law" and "suits in equity" irrelevant to the proper interpretation of § 104(a)(2).

Finally, the Court asserts that Congress fundamentally changed the nature of a Title VII suit when it enacted the Civil Rights Act of 1991, Pub. L. 102–166, 105 Stat. 1071. By authorizing compensatory and punitive damages in addition to backpay and injunctive relief, the Court suggests, Congress extended the statute's scope beyond purely economic losses to personal injury. See *ante*, at 241, n. 12. This theory is odd on its face, for even before the 1991

amendments Title VII reached much more than discrimination in the economic aspects of employment. The protection afforded under Title VII has always been expansive, extending not just to economic inequality, but also to "'working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers'" and "'demeaning and disconcerting'" conditions of employment. *Meritor Sav. Bank, FSB* v. *Vinson,* 477 U. S. 57, 66, 67 (1986) (quoting *Rogers* v. *EEOC,* 454 F. 2d 234, 238 (CA5 1971), cert. denied, 406 U. S. 957 (1972); *Henson* v. *Dundee,* 682 F. 2d 897, 902 (CA11 1982)).

Given the historic reach of Title VII, Congress' decision to authorize comparably broad remedies most naturally suggests that legislators thought existing penalties insufficient to effectuate the law's settled purposes. There is no need to guess whether Congress had a new conception of injury in mind, however. The Legislature set out the reason for new remedies in the statute itself, explaining that "additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace." Pub. L. 102–166, § 2, 105 Stat. 1071. This authoritative evidence that Congress added new penalties principally to effectuate an established goal of Title VII, not contrary speculation, should guide our decision.

By resting on the remedies available under Title VII and distinguishing the recently amended version of that law, the Court does make today's decision a narrow one. Nevertheless, I remain of the view that Title VII offers a tort-like cause of action to those who suffer the injury of employment discrimination. See *Price Waterhouse* v. *Hopkins,* 490 U. S., at 264–265 (O'CONNOR, J., concurring in judgment). For this reason, I respectfully dissent.