T.C. Memo. 1998-8


UNITED STATES TAX COURT


WALTER R. and MARILYN K. EASTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9166-96.                     Filed January 7, 1998.


Walter R. and Marilyn K. Easter, pro se.

<u>Allan D. Hill</u>, for respondent.


MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined a $33,193
deficiency in petitioners' 1992 Federal income taxes.  There are
two issues for consideration:  (1) Whether a settlement payment
of $135,000 and an incentive payment of $16,200 paid by State
Farm Insurance Company to petitioner Marilyn K. Easter to
encourage her to settle her sex discrimination claim in a class

action suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., are excludable from petitioners' gross income pursuant to section 104(a)(2)[1], and (2) whether petitioners are entitled to deduct $37,841 in legal fees, relating to the State Farm settlement, as a trade or business expense or as a miscellaneous itemized deduction.

At the time of the filing of their petition, petitioners, Walter R. and Marilyn K. Easter, resided in Pleasanton, California. Walter Easter is involved as a petitioner herein solely because he filed a 1992 joint income tax return with his wife Marilyn K. Easter. References to petitioner in the singular will be to Marilyn K. Easter.

Petitioner, whose maiden name was Marilyn Brent, was employed by State Farm Insurance Company from December 1, 1983, through February 27, 1986. She was a claimant in a class action suit filed in the District Court for the Northern District of California entitled Kraszewski v. State Farm Gen. Ins. Co., 38 Fair Empl. Prac. (BNA) Cas. 197 (N.D. Cal. 1985)(hereinafter "the class action suit"). On May 11, 1988, petitioner filled out a document entitled "INITIAL CLAIM FORM" that was used by the law firm of Farnsworth, Saperstein & Seligman (hereinafter referred to as the Saperstein firm) to evaluate her claim. During April

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1989, the Saperstein firm provided petitioner with a document entitled "Overview of Final Claimant Selection Process." On September 1, 1989, Mrs. Easter filed a final claim form with State Farm.

In January 1988, the Saperstein firm, representing the plaintiffs, and State Farm entered into a Consent Decree Regarding Monetary Relief, Instatement Relief, and Notice (hereinafter referred to as the Consent Decree) in order to facilitate resolution of the remaining claims. The Consent Decree limited damages available to class members to: "(1) back pay; (2) front pay; (3) prejudgment interest; (4) postjudgment interest; and (5) reasonable attorneys [sic] fees and costs." The Consent Decree also provides the manner in which the available damages will be calculated.

On January 17, 1992, District Court Judge Eugene Lynch sent a document entitled "Communication of State Farm's Settlement Offer" to all claimants, including Mrs. Easter, that had attached various documents describing State Farm's settlement offer. Included in the documents attached was the Master Settlement Agreement dated January 17, 1992, entered into by the Saperstein firm and State Farm's attorneys.

On February 12, 1992, petitioner signed a Settlement Agreement and General Release. In exchange for $135,000 plus additional payments of up to $18,000 (conditioned upon the percentage of claimants who settled), petitioner agreed to

release State Farm from "any claim * * * of any and every kind based on any federal, state, or local law * * * as well as any and all claims * * * arising out of or relating to any alleged discriminatory, improper, or unlawful act or omission of State Farm."  The $135,000 settlement represented 51 percent of the full value of petitioner's $264,935 claim.  The full value of the claim was calculated based on "back pay as a State Farm agent accrued from the year of the challenged appointment to February 1, 1992, plus six months of front pay from that date forward."

During the taxable year 1992, State Farm paid $135,000 in settlement of Mrs. Easter's claim in the class action suit and an incentive payment in the amount of $16,200, both in accordance with the Master Settlement Agreement and the Settlement Agreement and General Release.  Of the $151,200 total amount, $37,841.25 was retained by class counsel as legal fees, and the remainder was received by Mrs. Easter.  On April 24, 1992, the Saperstein firm sent Mrs. Easter its check for $112,778.29 that represented her share of the settlement proceeds from her State Farm claim, less $580.46 taxes withheld.

Section 104(a)(2) allows a taxpayer to exclude from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sum or periodic payments) on account of personal injuries or sickness".  In United States v. Burke, 504 U.S. 229 (1992), the taxpayers brought a sex

discrimination claim under Title VII of the Civil Rights Act of 1964 against their employer. The parties eventually reached a settlement in which the employees would receive varying amounts based on length of service and rate of pay. The employer withheld Federal income taxes on the amounts received by the taxpayers. Id. at 230-231. The taxpayers sought refunds of the withheld taxes on the ground that the settlement amounts were excludable under section 104(a)(2) as "damages received * * * on account of personal injuries or sickness." Id. at 232.

The Supreme Court held that the nature of the claim underlying the taxpayers' settlement awards controlled the excludability of the settlements under section 104(a)(2). Id. at 237. The Court noted that Title VII under the 1964 Civil Rights Act limited "available remedies to backpay, injunctions, and other equitable relief." Id. at 238. The Court further stated that

> The remedy, correspondingly, consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination. * * * Nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages * * *

Id. at 239. Since the taxpayers could receive under Title VII only wages, which they otherwise would have paid taxes upon in the normal course, the Court held that Title VII did not redress "a tort-like personal injury within the meaning of section

104(a)(2) and the applicable regulations."  Id. at 241.
Accordingly, the settlement amounts received by the taxpayers
were not excludable from gross income under section 104(a)(2).
Id. at 242.

Like the taxpayers in Burke, petitioner brought a sex
discrimination claim under Title VII of the Civil Rights Act of
1964 against her employer.  As in Burke, petitioner eventually
settled her claim.  The Settlement Agreement and General Release
provides:

> The approximate full value of CLAIMANT's claim under the
> Consent Decree damage formula as of February 1, 1992, is
> $264,935.00, which represents back pay as a State Farm agent
> accrued from the year of the challenged appointment to
> February 1, 1992, plus six months of front pay from that
> date forward.

The settlement amount of $135,000 offered to petitioner
represented 51 percent of the estimated Consent Decree value of
her claim.  According to Burke, since the damages available to
petitioner as a Title VII claimant consisted of only wages, which
would otherwise be taxable, the settlement amount she received
does not constitute "damages received * * * on account of
personal injuries".  Id. at 242.  Thus, it is not excludable
under section 104(a)(2).[2]

---

[2]  In November 1991, the Civil Rights Act of 1991 became
law.  Landgraf v. USI Films Prods., 511 U.S. 244, 249 (1994).  In
addition to the traditional remedies of backpay and injunction,
the new act allows the plaintiff to recover compensatory and
punitive damages.  It also gives the right to a jury trial.  Id.
at 252-253.  The Supreme Court held that those amendments did not
(continued...)

Petitioners have not differentiated between the settlement award and the incentive payment.  They contend that the entire amount is excludable.  In Berst v. Commissioner, T.C. Memo. 1997-137, we held that an incentive payment made to another claimant in the same class action suit (Kraszewski v. State Farm Gen. Ins. Co.) was received contingent upon the signing of the Release, making the incentive amount bargained-for consideration.  There is nothing that distinguishes the present case.  Thus, the incentive payment is also includable in gross income.

In the notice of deficiency, the Commissioner allowed petitioners to deduct their legal fees as a miscellaneous itemized deduction.  Petitioners have not contested this treatment except to the extent that they have argued that the entire award should be excluded from gross income pursuant to section 104(a)(2).  Based on our holding above, we conclude that petitioners must be treated as having conceded this issue.

Due to a concession by respondent,

Decision will be entered

under Rule 155.

---

(...continued)
apply retroactively.  Id. at 286.  Thus, petitioner's Title VII claim, and its potential exclusion under sec. 104(a)(2), must be considered in light of the Act under which she sued.  Clark v. Commissioner, T.C. Memo. 1997-156.  Since Burke also involved the application of sec. 104(a)(2) to a settlement award under Title VII of the 1964 Act, its result is squarely on point for this case.