T.C. Summary Opinion 2003-90

UNITED STATES TAX COURT

JAMES LEO ARMSTRONG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4834-00S.                    Filed July 16, 2003.

James Leo Armstrong, pro se.

<u>Monica J. Miller</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1997,
the taxable year in issue, and all Rule References are to the Tax
Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1997 in the amount of $1,377.

The issue for decision is whether petitioner received income from cancellation of indebtedness. We hold that he did.

Background

Some of the facts have been stipulated, and they are so found. Petitioner resided in Lantana, Florida, at the time that his petition was filed with the Court.

In or about 1991, petitioner began to incur debt on a credit card issued to him by Mellon Bank. Petitioner incurred the debt in helping to finance a home improvement project for a woman with whom he was romantically involved. Subsequently, after the relationship had soured, petitioner asked the woman for payment, but she refused. Petitioner continued to carry a balance on his credit card account.

In 1995, petitioner commenced an action against the woman in the county court for Palm Beach County, Florida. In the action, petitioner sought to recover based on an alleged oral contract between the woman and him. In January 1996, judgment was entered against petitioner on the ground that he was not a licensed contractor and, therefore, was not entitled under Florida law to recover on the alleged oral contract. Petitioner did not appeal the judgment, nor did he otherwise further pursue the matter against the woman. At no relevant time was the woman insolvent

or bankrupt.

By the beginning of 1997, the taxable year in issue, petitioner was (and had been for some time) in arrears in the payment of his credit card balance with Mellon Bank. Later that year, under circumstances not disclosed in the record, Mellon Bank forgave petitioner the debt, some $5,513, owed on his credit card account.

Petitioner was not insolvent in 1997, nor did he file for bankruptcy during that year.

Mellon Bank issued to petitioner, and filed with respondent, a Form 1099-C, Cancellation of Debt, reporting the cancellation of indebtedness in 1997 in the amount of $5,513. Petitioner did not report any part of this amount on his Federal income tax return for that year.

Subsequently, respondent determined that petitioner failed to report on his tax return for 1997 income from discharge of indebtedness in the amount of $5,513. Petitioner timely filed a petition disputing respondent's determination "due to the fact I did not have an economic gain from the consideration." Petitioner also attached to the petition a statement alleging that the home improvement project he helped finance was producing rent that was not being reported by the woman he had assisted. Petitioner concluded his statement with the following offer:

You have not nor will you ever see a tax dollar from this property without my information.  Therefore, if you are willing [to] forgive my tax liability for 1997 (I did not benefit from this debt) I will provide you with her name (only one like it) and the address of the rental property that you are not collecting tax dollars on (a lot of tax dollars).  To acknowledge your acceptance of my request, please send me a form 201 (to pay a commission) and I will then send you her name and address.

Discussion

A.  Applicable Principles

Respondent's determination in the notice of deficiency is presumed correct, and petitioner must prove such determination incorrect in order to prevail.[2]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 61(a) provides that "gross income means all income from whatever source derived" except as otherwise provided.  The definition of gross income is broad in scope, Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955), and exclusions from gross income are narrowly construed, United States v. Burke, 504 U.S. 229, 248 (1992); United States v. Centennial Sav. Bank FSB, 499 U.S. 573, 583 (1991).

It is beyond dispute that gross income includes income from the discharge of indebtedness.  Sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs.  As explained by the United States Supreme

---

[2]  Petitioner does not contend that sec. 7491(a) is applicable to this case, nor is it.

Court, the general theory is that to the extent that a taxpayer has been released from indebtedness, the taxpayer has realized an accession to income because the cancellation of indebtedness effects a freeing of assets previously offset by the liability arising from such indebtedness. United States v. Kirby Lumber Co., 284 U.S. 1 (1931); see Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). Thus, petitioner's argument that he did not benefit economically from the cancellation of his indebtedness to Mellon Bank is simply not correct.

A discharge of indebtedness generally produces income in an amount equal to the difference between the amount due on the obligation and the amount paid for the discharge. If no consideration is paid for the discharge, then the entire amount of the debt is considered the amount of income that the debtor must include in income. Sec. 61(a)(12). In the present case, the amount owed by petitioner to Mellon Bank at the time of the discharge was $5,513, and the amount paid by petitioner to Mellon Bank for the discharge was $0. Accordingly, the amount that petitioner must include in income is $5,513, as determined by respondent.

Admittedly, there are both statutory and common law exceptions to the rule requiring the recognition of income from the discharge of indebtedness. E.g., sec. 108(a), Zappo v. Commissioner, 81 T.C. 77, 85-86 (1983). Thus, for example, gross

income does not include any amount that would be includable in gross income by reason of the discharge of indebtedness if the discharge occurs in the context of a bankruptcy case or when the taxpayer is insolvent. However, none of these exceptions has been shown to apply in the present case.

Finally, we recognize that the debt incurred by petitioner on his Mellon Bank credit card could be viewed as giving rise to a series of loans, rather than gifts, from petitioner to the woman, the nonpayment of which could give rise to a bad debt deduction. See sec. 166. This view would require petitioner to prove, inter alia, that: (1) A bona fide debt existed; (2) the debt became worthless; and (3) worthlessness occurred during the taxable year in issue. See secs. 1.166-1(a), (c), and 1.166-2(a) through (c), Income Tax Regs.

Petitioner's testimony at trial, if accepted at face value, might suffice to prove that a bona fide debt existed. However, whether the debt became worthless is problematic. In any event, assuming that it did, the record would not support a finding that the debt became worthless during the taxable year in issue. Accordingly, we are unable to conclude that petitioner is entitled to a bad debt deduction.

B. Conclusion

For the reasons set forth above, respondent's determination is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To give effect to our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for respondent.</u>