T.C. Summary Opinion 2018-33

UNITED STATES TAX COURT

DONALD L. ZINGER AND NICOLE A. ZINGER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13096-16S.                    Filed July 2, 2018.

Donald L. Zinger and Nicole A. Zinger, pro sese.

Alissa L. VanderKooi and Robert D. Heitmeyer, for respondent.

SUMMARY OPINION

LEYDEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated March 7, 2016, respondent determined a deficiency in Mr. and Mrs. Zinger's 2013 Federal income tax of $8,531 and a section 6662(a) accuracy-related penalty of $1,706. After concessions by the parties,[2] the only issue for decision is whether the settlement payment of $20,000 that Mrs. Zinger received in 2013 is excludable from Mr. and Mrs. Zinger's gross income under section 104(a)(2). The Court holds that the settlement payment is not excludable.

---

[1](...continued)
Revenue Code, as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The deficiency arises from unreported gross retirement income of $2,859, unreported taxable retirement income of $1,544, a 10% additional tax under sec. 72(t) of $440 on the unreported gross and taxable retirement income, and unreported other income of $20,000. Mr. and Mrs. Zinger do not dispute that they received the gross retirement income of $2,859 and taxable retirement income of $1,544 and that they are liable for the 10% additional tax under sec. 72(t) of $440. They also do not dispute that Mrs. Zinger received a settlement payment (i.e., the other income) of $20,000 but dispute whether it must be included in gross income for 2013. Respondent concedes that Mr. and Mrs. Zinger are not liable for the sec. 6662(a) accuracy-related penalty for 2013.

## Background

At the time Mr. and Mrs. Zinger filed their petition they resided in Michigan. They timely filed their 2013 joint Federal income tax return and, as relevant in this case, did not report the settlement payment of $20,000.

I.    Mrs. Zinger's Conflict at Work

Sometime before 2013 Mrs. Zinger began working for the Department of the Army (Army), and she continued to work for the Army until her resignation on January 17, 2013. In late 2011 Mrs. Zinger was in a car accident while driving home from work. The car accident resulted in a back injury for which she was required to receive physical therapy frequently for two to three months after the accident. Her supervisor at that time leniently allowed her to use sick time to receive the necessary physical therapy. In March 2012 Mrs. Zinger's supervisor was reassigned, and Jack Spielman became her supervisor. Shortly thereafter Mrs. Zinger and Mr. Spielman had conflicts.

Mr. Spielman was not aware of Mrs. Zinger's accident or her physical condition after the accident and questioned her availability at work. Mrs. Zinger provided Mr. Spielman with information about her accident, and according to Mrs. Zinger "everything was squared away and set".

In April 2012 Mrs. Zinger took a preapproved two-week family vacation. During the family vacation her grandmother became very ill. After the family vacation Mrs. Zinger returned to work. She had another preapproved vacation with Mr. Zinger scheduled to start May 10, 2012, but her grandmother's health worsened. Mrs. Zinger changed her vacation plans to be with her grandmother and received approval from an acting supervisor, Cynthia Person, to begin her preapproved leave early on May 8, 2012, so that she could spend the last few days with her grandmother. While traveling to see her grandmother, she continued to do some work and took business phone calls. At some point Mr. Spielman notified her that she was not to take any business phone calls while she was on leave, and Mrs. Zinger stopped and arranged for another employee to conduct business while she was on leave.

After her grandmother had passed away, Mrs. Zinger returned to the office and logged her leave as bereavement leave. Mr. Spielman notified her that he was changing her bereavement leave to absent without leave (AWOL) because a grandparent's death did not qualify for bereavement leave. He requested that Mrs. Zinger provide documentation from her grandmother's attending physician verifying that Mrs. Zinger's presence was required for the leave to qualify as bereavement leave. Mrs. Zinger obtained the requested documentation and her

AWOL status was changed to bereavement leave. Mrs. Zinger felt that Mr. Spielman belittled and personally attacked her.

While Mrs. Zinger was on leave, Mr. Spielman relocated her desk to an area that separated her from her coworkers. When she returned to work, she asked her coworkers if another desk closer to them was available and moved her belongings to that available desk. Mrs. Zinger believed that being separated from her coworkers was not conducive to the work she needed to perform. Mr. Spielman ordered her to move her belongings back to her relocated desk. Mrs. Zinger continued to feel personally attacked and belittled by Mr. Spielman. He told her she did not know what she was doing and that she was not conducting her work properly. He questioned what Mrs. Zinger did, where she was, and why she was not working at night. Mrs. Zinger testified that after this her heart began racing, she experienced shortness of breath, and she felt as though she might be having a heart attack.

On May 18, 2012, Mrs. Zinger sought medical attention for her symptoms. Her doctor determined that her white blood cell count was severely elevated. Her doctor recommended that she be placed on medical leave status starting May 18, 2012, and that certain tests be performed to determine her condition. Her doctor

performed the tests, prescribed her various medications, and cleared her to return to work on May 29, 2012.

On May 29, 2012, she received a memorandum of reprimand. In that memorandum Mr. Spielman reprimanded her for "discourteous behavior toward a supervisor". Mr. Spielman alleged that a May 8, 2012, email from Mrs. Zinger had a "very discourteous tone". The memorandum of reprimand notified Mrs. Zinger of her right to file a grievance and also to file a complaint of discrimination with the TACOM-LCMC Equal Employment Opportunity Office (EEO) if she believed the action discriminated against her on the basis of race, color, religion, sex, national origin, age, physical or mental handicap, and/or reprisal.

On June 1, 2012, Mrs. Zinger was experiencing car trouble and notified Ms. Person by email that she would be late to work that morning. On June 4, 2012, Ms. Person requested that Mrs. Zinger provide documentation to prove that she had car trouble and notified her that her leave would be documented as AWOL until the requested documentation was provided.

On that same day, Mrs. Zinger filed a formal written grievance to dispute Mr. Spielman's facts in the memorandum of reprimand. In her grievance she stated: "The untimeliness of this reprimand only came with reprisal for the previous actions and claims made by myself against Mr. Spielman to include

creating a hostile work environment and creating a very intimidating situation which led to serious health conditions on my part requiring me to be under doctor's care for a week." She further stated: "I feel I have received reprisal and have been intim[id]ated enough that it is affecting my health and my health continues to be of concern which is demonstrated by the medications I have been placed on." In addition to requesting that the memorandum of reprimand be removed from her personnel file and destroyed, Mrs. Zinger also requested that the Army reassign her to another supervisor or to stop Mr. Spielman from engaging in actions that she believed were hostile or intimidating. For example, she requested

> [to] be placed in an environment where Mr. Spielman cannot act in a hostile nor intimidating manner towards myself. Since this dispute has arisen, I have suffered from medical issues and conditions to include chest pains, shortness of breaths, hypertension due to stress, high blood pressure, and high white blood cell count. I am still undergoing medical tests. Originally I felt the situation between Mr. Spielman and myself was causing severe anxiety * * *

On June 4, 2012, Mrs. Zinger's doctor recommended that she be placed on medical leave from June 4 through 18, 2012, and that she return to work on June 19, 2012, at a reduced work schedule until August 20, 2012. The noted medical condition was anxiety, panic attacks, and hypothyroidism. Her treatment included medication, rest, and a stress free environment. On June 18, 2012, after a follow

up doctor's appointment, Mrs. Zinger notified Ms. Person that her doctor recommended that she not return to work until June 25, 2012.

When Mrs. Zinger returned to work on June 25, 2012, at the reduced work schedule, she learned that she had lost her computer access and security clearance. As a result, she had to sit at a desk with little work to perform.

## II.   EEO Complaint

At some point thereafter, the EEO began an investigation. The record is not clear whether Mrs. Zinger filed both a formal written grievance and a complaint of discrimination with the EEO or whether her formal written grievance was forwarded to the EEO and served as the basis for that complaint. In a statement of claims the EEO listed the following as Mrs. Zinger's stated claims to be investigated:

> Whether * * * [Mrs. Zinger] was discriminated against based on sex (female) and subjected [to a] hostile work environment when:
>
> a.   On May 8-10, 2012, she was placed on AWOL for not producing a physician's statement letter excusing her absences;
> b.   On May 16, 2012, she was denied a developmental assignment in the Program Executive Office (PEO), Ground Combat Systems (GCS);
> c.   On May 29, 2012, she received a Letter of Reprimand for discourteous behavior towards Mr. Spielman;

d.    [On June 4, 2012,] [s]he was required to provide proof of repairs and placed in AWOL status for 1.5 hours when her vehicle broke down * * *

e.    On June 6, 2012, she was ordered to return a government issued cell phone and laptop computer to Mr. Spielman when she was on five days of sick leave; and

f.    On June 25, 2012, she became aware that she had been stripped of her computer access and security clearance.

The EEO statement of claims does not refer to any personal physical injuries or physical sickness. Mrs. Zinger was offered the opportunity to use the EEO Alternative Dispute Resolution Program and agreed to participate in mediation. Mr. Zinger, who accompanied Mrs. Zinger to the EEO mediation, testified that Mrs. Zinger explained during the mediation how she felt. However, mediation was not successful.

From September 2012 through January 2013, Mrs. Zinger was placed on administrative leave while the EEO conducted its investigation. A preconference was scheduled for December 3, 2012, followed by a formal fact-finding conference scheduled from December 3 to 4, 2012. Mr. Zinger accompanied Mrs. Zinger to these conferences as her representative and to provide moral support.

III.   Settlement Agreement

On January 17, 2013, Mrs. Zinger and the Army executed a negotiated settlement agreement (settlement agreement) to settle the EEO complaint of

discrimination. Pursuant to that agreement the Army: (1) did not admit it had violated the Civil Rights Act of 1964 or any other Federal or State statute, law, or regulation; (2) agreed to pay Mrs. Zinger $20,000; (3) agreed to change an AWOL status recorded on Mrs. Zinger's records for November 14 and 15, 2012, to regular duty time; and (4) agreed to make arrangements for Mrs. Zinger to retrieve her belongings from her work station.

Pursuant to the settlement agreement, Mrs. Zinger agreed: (1) to immediately tender her resignation from Federal service effective January 17, 2013, including agreeing to sign a resignation letter and any official paperwork or forms required to complete the resignation; (2) that the settlement agreement constituted "a full and complete settlement of any and all issues and claims arising from" the EEO complaint and waived her right to pursue any administrative or judicial action concerning the matters raised in the EEO complaint; (3) to withdraw any other complaints, appeals, or grievances she may have filed and to waive her right to pursue any administrative or judicial action regarding any other matters that had been filed; and (4) not to file or pursue any complaints, appeals, or grievances. The settlement agreement did not refer to Mrs. Zinger's formal written grievance.

The agreement expressly stated: "The document contains the entire agreement of the parties. No other promises or agreements have been made. This Agreement may not be modified or amended except in writing, signed by all the * * * signatories." The settlement agreement does not refer to any personal physical injuries or physical sickness suffered by Mrs. Zinger.

Mrs. Zinger received a check dated March 28, 2013, for $20,000. The $20,000 settlement payment was reported to Mrs. Zinger and to the IRS on Form 1099-MISC, Miscellaneous Income.[3]

## Discussion

The Commissioner's determination in a notice of deficiency is presumed correct, and a taxpayer bears the burden of proving that the determination is erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Mr. and Mrs. Zinger have neither argued that

---

[3]A Form 1099-MISC was initially issued reporting a payment of $40,000 as nonemployee compensation. A corrected Form 1099-MISC was subsequently issued accurately reporting the settlement payment as $20,000 and as other income. The parties agree that the settlement payment at issue is $20,000 of other income.

section 7491(a)(1) applies nor established that its requirements are met.  The burden of proof remains with Mr. and Mrs. Zinger.

Generally, gross income includes all income from whatever source derived.  See sec. 61(a); sec. 1.61-1(a), Income Tax Regs.  While section 61(a) broadly applies to any accession to wealth, statutory exclusions from gross income are to be narrowly construed.  See Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995); United States v. Burke, 504 U.S. 229, 233 (1992); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).  Litigation settlement proceeds constitute gross income unless the taxpayer proves that the proceeds fall within a specific statutory exclusion.  Commissioner v. Schleier, 515 U.S. at 328-337; see Save v. Commissioner, T.C. Memo. 2009-209, 2009 Tax Ct. Memo LEXIS 211, at *3.  Mr. and Mrs. Zinger must bring themselves within the clear scope of a statutory exclusion to succeed in proving they are entitled to exclude the settlement payment from gross income for 2013.  See Commissioner v. Schleier, 515 U.S. at 327-328; Burke, 504 U.S. at 233.

Mr. and Mrs. Zinger assert that the settlement payment is excludable from gross income under section 104(a)(2).  That section provides that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement * * *) on account of personal physical

injuries or physical sickness". Sec. 104(a)(2). Congress intended this exclusion to cover damages that flow from a physical injury or physical sickness. See H.R. Conf. Rept. No. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041. For purposes of section 104(a)(2), emotional distress is not treated as a physical injury or physical sickness, except for damages not in excess of the cost of medical care attributable to emotional distress. Sec. 104(a) (flush language).

When damages are received under a settlement agreement, the nature of the claim that was the actual basis for the settlement determines whether the damages are excludable under section 104(a)(2). Burke, 504 U.S. at 237. The nature of the claim is typically determined by reference to the terms of the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995). The "key question" is: "In lieu of what were the damages awarded?" Robinson v. Commissioner, 102 T.C. at 126 (quoting Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), aff'g 1 T.C. 952 (1943)).

To determine whether the $20,000 settlement payment Mrs. Zinger received pursuant to the settlement agreement is excludable from gross income under section 104(a)(2), the Court looks to the express terms of that agreement. The

settlement agreement between Mrs. Zinger and the Army states that its purpose was to settle the EEO complaint. Although the record does not contain a copy of the EEO complaint, the claims in the EEO statement of claims presumably derive from that complaint. The EEO statement of claims neither references any personal physical injuries or physical sickness of Mrs. Zinger nor allocates the $20,000 settlement payment as compensation to Mrs. Zinger for personal physical injuries or physical sickness. Rather, the EEO statement of claims explicitly states that the EEO was investigating whether Mrs. Zinger had been subjected to a hostile work environment or was discriminated against on the basis of sex. Therefore, the settlement agreement indicates that the Army intended to settle the hostile work environment and discrimination claims, not to compensate Mrs. Zinger for personal physical injuries or physical sickness.

Mrs. Zinger testified that during the conversations with the EEO attorneys, it was mentioned that the settlement payment was to compensate her for the personal physical sickness she had suffered but that the Army was unwilling to admit fault as to any claims in the settlement agreement. Undoubtedly, Mrs. Zinger's formal written grievance references her personal physical sickness. However, neither the settlement agreement nor the EEO statement of claims refers

to the formal written grievance or to any personal physical sickness, let alone an intent to compensate Mrs. Zinger for personal physical sickness.

Although the Court is sympathetic to Mrs. Zinger's situation, she and Mr. Zinger have not satisfied their burden of introducing objective and credible evidence that any part of the $20,000 settlement payment was made "in lieu" of damages for personal physical injuries or physical sickness. See Simpson v. Commissioner, 141 T.C. 331, 339-340 (2013) (quoting Fono v. Commissioner, 79 T.C. 680, 692 (1982), aff'd without published opinion, 749 F.2d 37 (9th Cir 1984)), aff'd 668 F. App'x 241 (9th Cir. 2016); Robinson v. Commissioner, 102 T.C. at 126.

The Court concludes that the settlement payment made to Mrs. Zinger pursuant to the settlement agreement was for the resolution and withdrawal of her discrimination and hostile work environment claims and not on account of personal physical injuries or physical sickness. Therefore, the $20,000 settlement payment Mrs. Zinger received pursuant to the settlement agreement is not excludable under section 104(a)(2) from Mr. and Mrs. Zinger's gross income for 2013.

The Court has considered the parties' arguments and, to the extent not discussed herein, the Court concludes the arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a)</u>.